2022 CO 8 Brooke E. Rojas, Petitioner v. The People of the State of Colorado, Respondent No. 20SC399
Supreme Court of Colorado, En Banc
February 21, 2022

 Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 15CA126

 Attorneys for Petitioner: Megan A. Ring, Public Defender
Rachel K. Mercer, Deputy Public Defender.

 Attorneys for Respondent: Philip J. Weiser, Attorney General
Paul Koehler, Assistant Attorney General.

 JUSTICE HOOD delivered the Opinion of the Court, in which
 JUSTICE MÁRQUEZ, JUSTICE GABRIEL, JUSTICE HART, and
 JUSTICE SAMOUR joined.

 CHIEF
 JUSTICE BOATRIGHT, joined by JUSTICE BERKENKOTTER, concurred
 in the judgment only.

 OPINION

3

 HOOD,
 JUSTICE.

 ¶1
 Today, we discard a troublesome relic from Colorado's
 common law of evidence: the res gestae doctrine.

 ¶2
 Although it has morphed over time, the res gestae doctrine
 these days is often used as a shortcut for admitting
 character evidence about criminal defendants. While we seek
 to ensure that defendants are tried for the crimes with which
 they've been charged and not for seeming to have a
 propensity to engage in criminal conduct, "[c]riminal
 occurrences do not always take place on a sterile
 stage." People v. Lobato, 530 P.2d 493, 496
(Colo. 1975). So, res gestae evidence-septic though it
 sometimes may be-has been admitted because it is "linked
 in time and circumstances to the charged crime" or
 "is necessary to complete the story of the crime for the
 jury." Zapata v. People, 2018 CO 82, ¶ 58,
 428 P.3d 517, 530 (quoting People v. Skufca, 176
 P.3d 83, 86 (Colo. 2008)); People v. Quintana, 882
 P.2d 1366, 1373 (Colo. 1994). In short, we have treated res
 gestae evidence, in various ways, as intrinsic to the charged
 offenses and therefore not subject to the rules limiting the
 admissibility of extrinsic, uncharged misconduct evidence.
But because res gestae is so ill-defined, such uncharged
 misconduct evidence too often dodges the rules and slips into
 cases without the requisite scrutiny.

4

 ¶3
 It is time for us to bury res gestae. This court's
 adoption of the Colorado Rules of Evidence more than four
 decades ago should have rendered the res gestae doctrine
 obsolete. Under the Rules, if evidence is probative of a
 material fact, then it is relevant and presumptively
 admissible. CRE 401, 402. As a general matter, only when the
 probative value of relevant evidence is substantially
 outweighed by the danger of unfair prejudice does it need to
 be excluded. CRE 403. And uncharged misconduct evidence that
 meets certain requirements can be admitted to show, for
 example, that a defendant had the motive, opportunity, or
 intent to commit the charged offense. CRE 404(b). By
 continuing to rely on res gestae as a standalone basis for
 admissibility and allowing the vagueness of res gestae to
 persist next to these more analytically demanding rules of
 relevancy, we have created a breeding ground for confusion,
 inconsistency, and unfairness. ¶4 Therefore, we join
 other jurisdictions that have abandoned this always- nebulous
 and long-superfluous doctrine. In the case at hand, our
 decision to abolish the res gestae doctrine in criminal cases
 prompts us to reverse the judgment of the court of appeals
 and remand for a new trial.[1]

5

 I.
Facts and Procedural History

 ¶5
 This is the second time we have reviewed this case. See
People v. Rojas, 2019 CO 86M, 450 P.3d 719
("Rojas I"). Brooke Rojas was convicted of
 two counts of theft based on her improper receipt of food
 stamp benefits.

 ¶6
 Rojas initially applied for food stamp benefits from the
 Larimer County Department of Human Services (the
 "Department") in August 2012 when she had no
 income. She received a recertification letter in December,
 which she submitted in mid-January 2013, indicating that she
 still had no income. And although she had not yet received a
 paycheck when she submitted the recertification letter, Rojas
 had started a new job on January 1.

 ¶7
 Rojas continued receiving food stamp benefits every month
 until July, when she inadvertently allowed them to lapse. She
 reapplied in August 2013. Although still working, Rojas
 reported that she had no income. The Department checked
 Rojas's employment status in connection with the August
 application and learned that she was making about $55, 000 a
 year (to support a family of seven). The Department
 determined that Rojas had received $5, 632 in benefits to
 which she was not legally entitled.

 ¶8
The prosecution charged Rojas with two counts of theft under
 section 18-4-401(1)(a), C.R.S. (2021). The first count was
 for the benefits she

6

received between February 1, 2013, and June 4, 2013; the
 second count was for the benefits she received between June
 5, 2013, and July 31, 2013.[2]

 ¶9
 At trial, Rojas's defense was that she lacked the
 requisite culpable mental state-she didn't knowingly
 deceive the government; she just misunderstood the forms. The
 prosecution's theory was that Rojas's misstatements
 on the January recertification form were not an oversight but
 rather a knowing attempt to receive benefits to which she
 wasn't legally entitled.

 ¶10
 Before trial, Rojas objected to the prosecution's
 proposed admission of the August 2013 application because it
 exceeded the time period of the charged offenses and
 didn't lead to the receipt of any benefits. The
 prosecution countered that the application was admissible as
 res gestae evidence-to show how the investigation began-and
 as evidence of specific intent. The court found it relevant
 as circumstantial evidence of Rojas's mental state.

 ¶11
 On the morning of trial, Rojas renewed her objection to
 introduction of the August 2013 application, again asserting
 that it was irrelevant and unfairly

7

prejudicial. She further argued the application was
 impermissible 404(b) evidence. And she requested a limiting
 instruction to explain to the jurors that they may consider
 the application "for purposes of explaining how the
 investigation of Ms. Rojas began only and . . . not . . . for
 any other purpose." The court determined that the
 application was not 404(b) evidence, was relevant to the
 charged offenses, and was admissible. The jury received no
 limiting instruction.

 ¶12
The prosecution questioned Rojas about the August 2013
 application during her testimony, highlighting that she knew
 she was employed at that time yet still indicated on the form
 that she was not. The prosecution also discussed the August
 2013 application in its opening and closing arguments as
 evidence of Rojas's intent.

 ¶13
 A jury convicted Rojas of two counts of theft under the
 general theft statute for obtaining food stamp benefits to
 which she was not legally entitled. Rojas appealed, and a
 division of the court of appeals vacated the convictions.
People v. Rojas, 2018 COA 20, ¶ 40, 490 P.3d
 391, 398. We granted certiorari to review whether the
 legislature had "created an independent criminal offense
 for food stamp theft that abrogated the State's authority
 to prosecute under the general theft statute." Rojas
 I, ¶ 9 n.1, 450 P.3d at 721 n.1. Concluding it had
 not, we reversed the court of appeals' judgment and
 remanded for the division to consider any remaining issues on
 appeal. Id. at ¶ 28, 450 P.3d at 724.

 ¶14
 On remand, the division addressed the three remaining
 contentions and affirmed Rojas's convictions, but it
 remanded for resentencing and correction of the mittimus to
 reflect statutory changes that reduced the felony level of
 her offenses. People v. Rojas, 2020 COA 61, ¶
 32, 490 P.3d 744, 749 ("Rojas II"). Rojas
 again petitioned this court for certiorari review, which we
 granted.[3]

 II.
Analysis

 ¶15
 After identifying the standard of review, we describe the
 evolution of the res gestae doctrine in Colorado. We then
 consider some of the criticism of the doctrine before
 concluding that the modern Rules of Evidence have rendered
 the res gestae doctrine superfluous. In the interest of
 providing guidance going forward, we also discuss what should
 trigger 404(b) scrutiny under the modern Rules.

 A.
Standard of Review

 ¶16
We review a trial court's evidentiary rulings for an
 abuse of discretion. Venalonzo v. People, 2017 CO 9,
 ¶ 15, 388 P.3d 868, 873. A trial court abuses its
 discretion when its ruling is based on an erroneous view of
 the law. People v. Wadle, 97 P.3d 932, 936 (Colo.
2004).

 ¶17
 In reviewing a trial court's ruling, appellate courts
 ordinarily adhere to precedent under the doctrine of stare
 decisis. See Love v. Klosky, 2018 CO 20, ¶ 14,
 413 P.3d 1267, 1270. However, the doctrine is not so
 inflexible that we can't reevaluate our precedent where
 "we are 'clearly convinced that the rule was
 originally erroneous or is no longer sound because of
 changing conditions and that more good than harm will come
 from departing from precedent.'" McShane v.
 Stirling Ranch Prop. Owners Ass'n, Inc., 2017 CO 38,
 ¶ 26, 393 P.3d 978, 984 (quoting People v.
 Blehm, 983 P.2d 779, 788 (Colo. 1999)); People v.
 LaRosa, 2013 CO 2, ¶¶ 30-31, 293 P.3d 567,
 574-75 (departing from stare decisis after concluding there
 were sound reasons for doing so).

 B.
The Evolution of the Res Gestae Doctrine in Colorado

 ¶18
 Res gestae has deep roots in American common law. The Supreme
 Court first referenced the doctrine in 1817, Leeds v.
 Marine Ins. Co., 15 U.S. 380, 383 (1817), and Colorado
 courts have recognized it since at least the 1870s, see
Doane v. Glenn, 1 Colo. 495, 499-501 (1872),
 rev'd on other grounds by Doane v. Glenn, 88
 U.S. 33

(1874). The Latin phrase, which means "things
 done," Res Gestae, Black's Law Dictionary
 (11th ed. 2019), encompassed evidence that was necessary to
 understand the charged crime:

Res gestae may be broadly defined as matter incidental to a
 main fact and explanatory of it, including acts and words
 which are so closely connected therewith as to constitute a
 part of it, and without a knowledge of which the main fact
 might not be properly understood. They are the events
 themselves speaking through the instinctive words and acts of
 participants; the circumstances, facts and declarations which
 grow out of the main fact, are contemporaneous with it and
 serve to illustrate its character.

Denver City Tramway Co. v. Brumley, 116 P. 1051,
 1052-53 (Colo. 1911); see also Graves v. People, 32
 P. 63, 65 (Colo. 1893) ("Res gestae are events speaking
 for themselves, through the instinctive words and acts of
 participants, not the words and acts of participants when
 narrating the events. What is done or said by participants
 under the immediate spur of a transaction becomes thus part
 of the transaction, because it is then the transaction that
 thus speaks." (quoting Francis Wharton, A Treatise
 on the Law of Evidence in Criminal Issues § 262
 (9th ed. 1884))).

 ¶19
 In these early formulations, res gestae served primarily as
 an exception to the general prohibition against hearsay. 2
 Kenneth S. Broun et al., McCormick on Evidence
§ 268 (Robert P. Mosteller ed., 8th ed. 2020). Courts
 admitted statements made during or adjacent to the charged
 crime because it was assumed that the spontaneity of such
 statements rendered them reliable. See Archina v.
 People, 307 P.2d 1083, 1097 (Colo. 1957) ("Under
 the well-established doctrine of res

 gestae, unsworn statements are admitted on the theory that
 they are spontaneous utterances, dominated and evoked by the
 transaction itself, and are not the result of premeditation,
 reflection or design."); see also Zapata,
 ¶ 71, 428 P.3d at 532 (Hart, J., specially concurring);
H. Patrick Furman & Ann England, The Expanding Use of
 the Res Gestae Doctrine, 38 Colo. Law. 35, 35 (2009).

 ¶20
 In this way, res gestae statements were treated much like the
 later-codified hearsay exceptions for present sense
 impressions, excited utterances, and then-existing mental
 states. See CRE 803(1)-(3); People v.
 Dement, 661 P.2d 675, 679 (Colo. 1983) (equating the
 requirements for admitting excited utterances under CRE 803
 to the pre-adoption requirements for admitting res gestae
 statements), abrogated on other grounds by People v.
 Fry, 92 P.3d 970 (Colo. 2004); see also McCormick on
 Evidence, supra, § 268.

 ¶21
 Even in its hearsay heyday, however, the vagueness of res
 gestae earned stiff rebukes from esteemed scholars and
 jurists. Professor Wigmore lamented that res gestae's
 "indefiniteness has served as a basis for rulings where
 it was easier for the judge to invoke this imposing catchword
 than to think through the real question involved."
Res Gestae, Black's Law Dictionary (11th ed.
 2019) (quoting John H. Wigmore, A Students' Textbook
 of the Law of Evidence 279 (1935)). Judge Learned Hand
 was equally blunt, observing that res gestae "is a
 phrase which has been accountable for so much confusion that
 it had best be denied any place

 whatever in legal terminology; if it means anything but an
 unwillingness to think at all, what it covers cannot be put
 in less intelligible terms." United States v.
 Matot, 146 F.2d 197, 198 (2d Cir. 1944).

 ¶22
 Despite these misgivings, res gestae gradually seeped into
 the realm of uncharged misconduct evidence. Like res gestae,
 the law limiting the use of uncharged misconduct evidence has
 a long history in American jurisprudence. Because such
 evidence "has inhering in it damning innuendo likely to
 beget prejudice in the minds of jurors" and "tends
 to inject collateral issues into a criminal case which are
 not unlikely to confuse and lead astray the jury,"
Stull v. People, 344 P.2d 455, 458 (Colo. 1959),
 superseded by rule as stated in People v. Williams,
 2020 CO 78, ¶¶ 7-15, 475 P.3d 593, 595-98, its
 admissibility was "strictly limited" under the
 common law, Williams, ¶ 7, 475 P.3d at 596.

 ¶23
 Thus, a conflict emerged. While the scope of res gestae
 evidence expanded, the common law governing other-acts
 evidence remained exclusionary. "Prior to the adoption
 of the Colorado Rules of Evidence, . . . Colorado decisional
 law adhered to the exclusionary principle that, subject to
 narrow exceptions, evidence of other crimes was not
 admissible as proof of the accused's guilt with respect
 to the crime charged." People v. Garner, 806
 P.2d 366, 369 (Colo. 1991). When a trial court admitted
 other-acts evidence (or "similar transaction
 evidence," as this court then termed it), we required
 the court to employ a set of procedural protections

 focusing the jury on the limited purpose for which the
 evidence was received.[4] Stull, 344 P.2d at 458-59. The
 prosecution, as the proponent of such evidence, had to
 establish by "clear and convincing evidence" that
 the other act had occurred and that the defendant was the
 person who had engaged in the misconduct. See
People v. Botham, 629 P.2d 589, 602 (Colo. 1981),
 superseded by rule as stated in Garner, 806 P.2d at
 370. And we insisted that the court address three threshold
 issues:

(1) is there a valid purpose for which the evidence is
 offered? (2) is the evidence relevant to a material issue of
 the case? (3) does the probative value of the evidence of the
 prior act, considering the other evidence which is relevant
 to the issue, outweigh the prejudice to the defendant which
 would result from its admission?

People v. Honey, 596 P.2d 751, 754 (Colo. 1979),
 superseded by rule as stated in People v. Rath, 44
 P.3d 1033, 1039 (Colo. 2002).

 ¶24
 Res gestae became a convenient way to bypass the more
 rigorous requirements of Stull and its common-law
 progeny. It became a catchall for admitting all sorts of
 misdeeds and character evidence -no matter how attenuated

 in time, place, or manner-without carefully considering
 whether it was intrinsic or extrinsic to the charged crime.
See Lancaster v. People, 615 P.2d 720, 723 (Colo.
1980) (applying pre-Rules common law and noting that although
 "we have alluded to the importance of the temporal
 proximity of the statement to the event in a number of cases,
 we also have noted that contemporaneity of the act and the
 assertion is not required" (citations omitted)).

 C.
The Modern Rules of Evidence

 ¶25
 Although the modern Rules we adopted in 1980 said nothing
 about res gestae, they broadly favored the admission of
 relevant evidence. Under Rules 401 and 402, unless otherwise
 prohibited by constitution, rule, or statute, all evidence is
 admissible if it tends to make the existence of any
 consequential fact more or less probable. And Rule 403
 provides that otherwise relevant evidence may be excluded
 "if its probative value is substantially
 outweighed by the danger of unfair prejudice,
 confusion of the issues, or misleading the jury, or by
 considerations of undue delay, waste of time, or needless
 presentation of cumulative evidence." (Emphases added.)

 ¶26
 Furthermore, the Rules of Evidence included Rule 404, which
 now governs the admissibility of character evidence. Under
 404(a), with certain limited exceptions, "[e]vidence of
 a person's character or a trait of his character is not
 admissible for the purpose of proving that he acted in
 conformity therewith on a

 particular occasion." And 404(b) provides that
 "[e]vidence of any other crime, wrong, or act is not
 admissible to prove a person's character in order to show
 that on a particular occasion the person acted in conformity
 with the character" but may be admissible for purposes
 such as "proving motive, opportunity, intent,
 preparation, plan, knowledge, identity, absence of mistake,
 or lack of accident." Rule 404(b)(3) requires that, in
 criminal cases, the prosecution provide the court and the
 defendant with reasonable notice of its intent to introduce
 other-acts evidence in writing before the trial. The notice
 must include the permitted purpose for which admission of the
 evidence is sought and the reasoning supporting that purpose.
CRE 404(b)(3)(B).[5]

 ¶27
 In People v. Spoto, 795 P.2d 1314, 1318-19 (Colo.
1990), this court "articulated a framework for
 determining the relevancy of this kind of [character]
 evidence within the scheme of the Rules, analyzing the
 requirements of CRE 401-404 in terms of four specific
 components, or evidentiary considerations."
Williams, ¶ 8, 475 P.3d at 596. Such evidence
 must be (1) logically relevant (2) to a material fact (3)
 independent of the prohibited inference of the
 defendant's bad character, and

(4) the probative value of the evidence must not be
 substantially outweighed by the risk of unfair prejudice.
Id. at ¶ 9, 475 P.3d at 596. If a court
 determines the evidence is admissible, the court must also,
 upon request, contemporaneously instruct the jurors of the
 limited purpose for which the evidence may be considered. CRE
 105; see People v. Bondsteel, 2015 COA 165, ¶
 85, 442 P.3d 880, 897, aff'd, 2019 CO 26, 439
 P.3d 847.

 ¶28
 And so, under the framework of the Rules, courts can admit
 uncharged misconduct evidence for almost any non-propensity
 purpose:

In contrast to the former narrowly defined exceptions to a
 general rule of exclusion, we have therefore made clear that
 Rule 404(b) identifies a single purpose for which other-crime
 evidence must always be excluded and delineates a
 non-exclusive list of examples of other reasons for which
 other-crime evidence is not to be excluded if it is otherwise
 admissible according to the rules of relevance. . . . The
 traditional litany of narrowly circumscribed exceptions of
 pre-Rules decisional law . . . no longer limits the
 admissibility of other-crime evidence.

Williams, ¶¶ 11-12, 475 P.3d at 596- 97;
see also Rath, 44 P.3d at 1038-39.

 D.
Examples of Inconsistency

 ¶29
 Despite these developments, the res gestae doctrine remained.
Unsurprisingly, courts wrestling with whether an act is res
 gestae evidence or 404(b) evidence have reached inconsistent
 and often unpredictable results.

 ¶30
 Consider, for example, People v. Hickam, 684 P.2d
 228, 230-31 (Colo. 1984), in which the prosecution charged
 the defendant with felony murder for a death

 that occurred during the defendant's flight from an
 attempted robbery. This court concluded evidence of the
 contemporaneous underlying robbery was admissible res gestae
 evidence of felony murder. Id. at 231-32. However,
 because one element of felony murder is proof that the
 defendant committed (or attempted to commit) one of the
 statutorily enumerated predicate crimes, evidence of the
 predicate was plainly relevant to proving felony murder and
 not unfairly prejudicial. Thus, we need not have relied on
 res gestae because evidence of the robbery was admissible
 under Rules 401-403.

 ¶31
 Now compare Hickam-where the proposed res gestae
 evidence and the charged offense occurred
 contemporaneously-to the following two examples involving
 more attenuated temporal connections between such evidence
 and the charged offenses.

 ¶32
 In People v. Czemerynski, 786 P.2d 1100, 1103 (Colo.
1990), the prosecution charged the defendant with harassment
 and criminal extortion based on threatening phone calls he
 allegedly made to the victim during a four-month period. The
 trial court, "[r]elying on CRE 404(b)," admitted
 hundreds of calls the defendant had allegedly made before and
 after the charged period "because [the evidence] proved
 identity and was part of the res gestae of the
 criminal episode." Id. at 1109 (emphasis
 added). This court concluded that the trial court had not
 abused its discretion by invoking both res gestae and Rule
 404(b) to admit the evidence.

Id. But by definition, 404(b) evidence is extrinsic
 to the charged crime while, traditionally, res gestae
 evidence is intrinsic to it. See Quintana, 882 P.2d
 at 1372. So our decision unnecessarily blurred the analytical
 lines by approving of the trial court's reliance on
 mutually exclusive theories for admitting the evidence.

 ¶33
 In Skufca, police officers arrested the defendant on
 a warrant for traffic offenses and, during a search incident
 to arrest, found drugs and drug paraphernalia in his car. 176
 P.3d at 84. Earlier in the day, the defendant had sold drugs
 to an undercover DEA agent. Id. The prosecution
 sought to introduce testimony about the drug transaction as
 res gestae evidence to help prove that the defendant
 knowingly possessed the drugs that were later found in his
 car. Id. at 85. The trial court found the testimony
 critical to the jury's understanding of the events
 surrounding the arrest and therefore admissible to explain
 the circumstances. Id. This court agreed with the
 trial court that the earlier drug transaction was admissible
 res gestae evidence because it was "relevant and it
 helped establish for the jury the context and circumstances
 surrounding the crime with which [the defendant] was
 charged." Id. at 86. However, it was an act
 separate from the charged offense, and its admissibility
 should have been considered under 404(b) and Spoto.
Moreover, under 404(b), the defendant would have been
 entitled to an instruction limiting the jury's use of the
 evidence to the prosecution's stated purpose.

 ¶34
 The preceding examples demonstrate how we have muddied the
 law by analyzing admissibility under res gestae instead of
 the Rules of Evidence. A more recent decision from this court
 seems to have at least partially presaged the move we make
 today.

 ¶35
 In People v. Greenlee, 200 P.3d 363, 365-69 (Colo.
2009), we concluded that the defendant's statement that
 he wanted to kill a woman and hide her body in a remote area,
 made two months before the murder at issue, was admissible
 under general relevancy rules (CRE 401-403) and not
 excludable under 404(b). Therefore, "there [was] no need
 to consider an alternative theory of relevance, such as
 res gestae, where the evidence [was] admissible
 under general rules of relevancy." Greenlee,
 200 P.3d at 368. Although we grounded the decision in the
 Rules of Evidence rather than pre-Rules common law, we
 nonetheless added to the confusion by concluding that,
 because the statements were relevant independent of the
 impermissible inference about the defendant's character,
 404(b) did not apply.[6] Id. But this criterion is simply
 part of the 404(b) analysis

 under Spoto, not a basis for avoiding Rule 404(b).
If the proffered evidence is extrinsic to the charged crime,
 which the Greenlee court impliedly concluded these
 statements were, 200 P.3d at 366-67, and if it implicates the
 defendant's character, its admissibility is governed by
 Rule 404(b). We discuss this at greater length below.

 E.
Farewell Res Gestae

 ¶36
 In his dissent to the division's opinion here, Judge
 Furman rightly observed that res gestae often
 "obscure[s] what [it] purport[s] to describe."
Rojas II, ¶ 59, 490 P.3d at 752 (Furman, J.,
 dissenting) (alteration in original) (quoting 1 Kenneth S.
 Broun et al., McCormick on Evidence § 190.9
(Robert P. Mosteller ed., 8th ed. 2020)). And he has not been
 alone in his criticism. See, e.g., Zapata,
 ¶ 76, 428 P.3d at 533 (Hart, J., specially concurring)
(noting that res gestae "is a vague and nearly
 standardless concept that is applied too expansively");
People v. Agado, 964 P.2d 565, 569 (Colo.App. 1998)
(Briggs, J., specially concurring) ("[T]he doctrine has
 confounded counsel and courts, often tending to create as
 much confusion as clarification.").

 ¶37
 Not only is the doctrine vague, it's harmful. Because of
 its ambiguity, res gestae-which was never more than a theory
 of relevance, Greenlee, 200 P.3d at 368-is more
 often treated as a theory for near-universal admissibility.
The doctrine invites truncated analysis. As noted by Justice
 Hart in her special concurrence in Zapata, res
 gestae all too often "short-circuit[s] the evaluation
 called for in Rule 404(b)" analysis. ¶ 75, 428 P.3d
 at 532-33. The result has been that courts often skip the
 first step in deciding whether a defendant's acts are
 admissible: determining if the evidence is intrinsic or
 extrinsic to the charged offense. And by skipping this step,
 courts often admit what should be extrinsic, 404(b) evidence
 without conducting a Spoto analysis or adhering to
 procedural safeguards, or they consider the admissibility of
 intrinsic evidence under 404(b) and Spoto,
 effectively diluting the general relevancy rules.

 ¶38
 The "completing the story" rationale to admit
 other-acts evidence "create[s] the greatest risk of
 subverting the limitations that ought to apply whenever the
 jury is informed of a person's uncharged
 wrongdoing." David P. Leonard, New Wigmore on
 Evidence: Evidence of Other Misconduct § 5.3.2 (2d
 ed. Supp. 2020). This application of res gestae risks being
 the exception that swallows Rule 404(b). For example, in
 Lucas v. People, 992 P.2d 619, 624 (Colo.App. 1999),
 a case involving a murder allegation, a division of the court
 of appeals approved of the trial court's admission of
 evidence of a burglary the defendant committed three days
 before

 the charged crime under the doctrine of res gestae to
 demonstrate that he and his friends left Colorado Springs
 with no means of supporting themselves. The prosecution
 asserted that they "began to commit crimes in order to
 provide for themselves" and, operating under such
 conditions, "encountered, robbed, and killed the
 victim." Id. This language is "perilously
 close to simply admitting evidence of bad character."
Furman & England, supra, 38 Colo. Law. at 38.
¶39 Moreover, the continued use of res gestae is
 unnecessary. "[E]very rule of evidence to which it has
 ever been applied exists as a part of some other
 well-established principle and can be explained in the terms
 of that principle." 6 John Henry Wigmore, Evidence
 in Trials at Common Law § 1767 (James H. Chadbourne
 rev., 1976).

 ¶40
 Colorado's experience is not unique. Many jurisdictions
 have determined that res gestae is incompatible with the
 modern Rules. See, e.g., People v. Jackson,
 869 N.W.2d 253, 264 (Mich. 2015) ("[T]he plain language
 of MRE 404(b) . . . sets forth no such 'res gestae
 exception' from its coverage. Nor do we see any basis for
 reading one into the rule."); State v. Fetelee,
 175 P.3d 709, 735 (Haw. 2008) (concluding that the Hawaiian
 Rules of Evidence supersede res gestae); United States v.
 Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000) ("[W]e
 are confident that there is no general 'complete the
 story' or 'explain the circumstances' exception
 to Rule 404(b) . . . ."). And several of the federal
 courts have stopped relying on res

 gestae, or "inextricable intertwinement," as a
 theory of admission. E.g., United States v.
 Gorman, 613 F.3d 711, 719 (7th Cir. 2010)
("[R]esort to inextricable intertwinement is unavailable
 when determining a theory of admissibility."); see
 also Daniel J. Capra & Liesa L. Richter,
 Character Assassination: Amending Federal Rule of
 Evidence 404(b) to Protect Criminal Defendants, 118
 Colum. L. Rev. 769, 798-800 (2018).[7]

 ¶41
We now join those jurisdictions and abolish the res gestae
 doctrine in Colorado. For all of the reasons provided above,
 we are clearly convinced that more good than harm will come
 from departing from our precedent regarding res gestae
 evidence. In doing so, we seek to do more than simply
 de-Latinize the analysis. We strive to move beyond the use of
 catchphrases and metaphors for deciding when Rule 404(b) is
 at issue.

 F.
How to Decide When Rule 404(b) Applies

 ¶42
We recognize that abolishing the res gestae doctrine offers
 no magic wand. It won't eliminate the line-drawing
 problems inherent in deciding what evidence warrants 404(b)
 review. After all, Rule 404(b) requires trial courts to
 evaluate, in the first instance, when "other"
 crimes, wrongs, or acts are at issue. Therefore, some
 ambiguity remains regarding when the charged crime ends and
 "other" acts begin.

 ¶43
 Furthermore, Rule 404(b) applies only when the trial court
 determines that uncharged misconduct evidence supports an
 improper inference of the defendant's character. See
Old Chief v. United States, 519 U.S. 172, 184 (1997)
(describing Rule 404(b) as "dealing with admissibility
 when a given evidentiary item has the dual nature of
 legitimate evidence of an element and illegitimate
 evidence of character" (emphasis added)); see also
United States v. Kupfer, 797 F.3d 1233, 1242-43 (10th
 Cir. 2015) (explaining that evidence of a defendant's
 other acts

 is only subject to Rule 404(b) if it concerns the
 defendant's character). If evidence doesn't implicate
 the defendant's character, Rule 404(b) doesn't govern
 its admissibility.

 ¶44
We join those courts that generally recognize an
 intrinsic-extrinsic distinction, with extrinsic acts falling
 under Rule 404(b) and intrinsic acts falling outside the
 Rule's scope. See, e.g., United States v.
 Green, 617 F.3d 233, 248-49 (3d Cir. 2010);
Bowie, 232 F.3d at 928-29. These courts have
 narrowed the definition of intrinsic evidence to two acts:
 (1) those that directly prove the charged offense and (2)
 those that occur contemporaneously with the charged offense
 and facilitate the commission of it. Green, 617 F.3d
 at 248-49; Bowie, 232 F.3d at 929; see also
State v. Rose, 19 A.3d 985, 1009-10 (N.J. 2011)
(abolishing the res gestae doctrine and applying
 Green).

 ¶45
 Examples from jurisdictions already operating in the post-res
 gestae world are instructive. In United States v.
 Roberson, No. 21-102 (JDB), 2022 WL 35643, at *2 (D.D.C.
Jan. 4, 2022), the defendant was charged with one count of
 distribution of child pornography for sending a video by
 email to "Email Address 2." In a motion in limine,
 the prosecution sought to introduce all the defendant's
 email communications (over seventy emails spanning a
 fourteen-month period) with Email Address 2. Id. at
 *2, 4. The court observed that "[b]ecause Rule 404(b)
 applies exclusively to evidence of other acts . . . only
 '[a]cts "extrinsic" to the crime

 charged are subject to Rule 404(b)'s limitations; acts
 "intrinsic" to the crime are not.'"
Id. at *3 (quoting United States v. McGill,
 815 F.3d 846, 879 (D.C. Cir. 2016) (per curiam)). "[A]n
 act is 'intrinsic' to the charged conduct for
 purposes of Rule 404(b) only if it (a) is part of the charged
 offense; (b) is offered as direct evidence of the charged
 crime; or (c) was performed contemporaneously with the
 charged crime and facilitated the commission of the charged
 crime." Id. at *4.

 ¶46
 Using this framework, the court first summarized the
 communications sent before the video. Relying on the
 prosecution's summary, the court described that the first
 email was the defendant initiating contact with Email Address
 2, the second was Email Address 2 responding and directly
 soliciting the criminal act, and the third email was the
 defendant sending the video that formed the basis of the
 charged offense to Email Address 2. Id. This thread
 of communication all occurred within minutes. Id.
The court concluded that these emails "leading up to and
 immediately surrounding" transmission of the video were
 intrinsic evidence because they occurred contemporaneously
 with the charged offense and facilitated its commission and
 were not, therefore, constrained by Rule 404(b). Id.

 ¶47
The court then analyzed the emails sent after the video, some
 sent more than a year later, concluding that "[i]t
 stretches credulity to call . . . two messages sent fourteen
 months apart contemporaneous with one another."
Id. Further, because the court couldn't
 "see how an act occurring well after the charged crime
 could

'assist in bringing [the crime] about, '" it
 concluded the post-video emails were not intrinsic to the
 charged crime. Id. at *5 (quoting United States
 v. Cox, No. CR-16-08202-001-PCT-ROS, 2018 WL 9785498, at
 *1 (D. Ariz. May 1, 2018)).

 ¶48
 Finally, the court rejected the government's argument
 that all the emails between the defendant and Email Address 2
 "provide[d] necessary and indispensable context for [the
 defendant's] conduct," concluding that "such a
 broad view of 'intrinsic' . . . is too
 'flimsy' a basis for jettisoning Rule 404(b)
 entirely." Id. The court concluded the
 post-video emails were nonetheless admissible under Rule
 404(b) because they were probative of non-propensity
 purposes, relevant to a material issue other than the
 defendant's character, and not unduly prejudicial.
Id. at *5-7.

 ¶49
The court in United States v. Shea, 159 F.3d 37 (1st
 Cir. 1998), applied a similar test. In Shea, police
 were searching for the identity of two men who had attempted
 to rob a bank. Id. at 38-39. During the attempted
 robbery, one man pointed a shiny, silver revolver at one of
 the clerks while the other man pointed a black revolver at
 the other clerk; however, because neither clerk could open
 the vault, the robbers left empty-handed. Id. at 38.
The men entered and exited the bank through the same broken
 window, with one of the men cutting himself and leaving DNA
 evidence at the scene that was later matched to the
 defendant. Id. One week after the attempted robbery,
 the defendant was arrested for another, unrelated

 robbery. Id. at 38-39. During that arrest, police
 seized from the defendant a black revolver that matched the
 description of one of the guns used during the earlier,
 attempted robbery. Id.

 ¶50
 At the defendant's trial for the earlier, attempted armed
 robbery, the prosecution sought to introduce the black
 revolver. Id. at 38-39. The trial court admitted the
 revolver under Rule 404(b). Id. at 39. The appellate
 court rejected this reasoning, concluding the revolver alone
 was not 404(b) evidence and its admissibility should have
 been evaluated under Rules 401 and 403. Id. The
 court concluded that the revolver seized from the defendant
 during his arrest was "intrinsic, direct evidence"
 that he used the same revolver during the attempted robbery
 for which he was on trial. Id. at 39-40. The court
 further concluded that admitting the revolver into evidence
 was not unfairly prejudicial (as opposed to evidence of the
 second robbery, which would have been an extrinsic act
 subject to 404(b) analysis). Id. at 40.

 ¶51
 To further elucidate the relevant concepts, consider a purely
 hypothetical addition to Shea. Imagine the defendant
 had gone to the bank the day before the alleged robbery to
 cash a check, and the prosecution sought to introduce
 evidence of that visit at trial to suggest that the defendant
 could have been casing the bank. Because evidence of that
 visit neither directly proves the charged offenses nor
 occurred contemporaneously with them and facilitated their
 commission, that

 evidence is not intrinsic. Further, cashing a check at a bank
 does not implicate character, so admission of that evidence
 is not governed by 404(b). The court is left to consider the
 admissibility of that evidence pursuant to Rules 401-403.

 ¶52
 With these examples in mind, we hold that, in evaluating
 whether uncharged misconduct evidence triggers Rule 404(b), a
 trial court must first determine if the evidence is intrinsic
 or extrinsic to the charged offense. Intrinsic acts are those
 (1) that directly prove the charged offense or (2) that
 occurred contemporaneously with the charged offense and
 facilitated the commission of it. Evidence of acts that are
 intrinsic to the charged offense are exempt from Rule 404(b)
 because they are not "other" crimes, wrongs, or
 acts. Accordingly, courts should evaluate the admissibility
 of intrinsic evidence under Rules 401-403. If extrinsic
 evidence suggests bad character (and thus a propensity to
 commit the charged offense), it is admissible only as
 provided by Rule 404(b) and after a Spoto analysis.
Conversely, if extrinsic evidence does not suggest bad
 character, Rule 404(b) does not apply and admissibility is
 governed by Rules 401-403.[8]

 G.
Application to Rojas's Alleged Theft

 ¶53
 Because Rojas preserved her objection to the court's
 allegedly non- constitutional error, we review any error for
 ordinary harmlessness. Hagos v. People, 2012 CO 63,
 ¶ 12, 288 P.3d 116, 119; Crim. P. 52(a). Under this
 standard, we must reverse if the error "substantially
 influenced the verdict or affected the fairness of the trial
 proceedings." Hagos, ¶ 12, 288 P.3d at 119
(quoting Tevlin v. People, 715 P.2d 338, 342 (Colo.
1986)); see Crim. P. 52(a). To determine if that
 occurred, we look to whether the prosecution has shown that
 "there is no reasonable possibility that [the error]
 contributed to the defendant's conviction."
Pernell v. People, 2018 CO 13, ¶ 22, 411 P.3d
 669, 673.

 ¶54
The prosecution charged Rojas with two counts of theft for
 her conduct between February 1, 2013, and July 31, 2013.
Thus, Rojas's August application, filed after the
 relevant time period, neither directly proved the prior
 thefts nor occurred contemporaneously with them and
 facilitated their commission. Rojas's filing of the
 August application does not satisfy our definitions for
 intrinsic evidence and is, therefore, an extrinsic,
 "other act." Moreover, evidence that Rojas
 knowingly submitted a later application containing false
 information about her income invites the inference that she
 is a "bad" person who lies on applications and so
 she must have knowingly lied on the applications at issue in
 her trial. Therefore, because the August application is
 extrinsic to the charged crimes and

 invites a propensity inference, its admissibility is governed
 by Rule 404(b). The trial court abused its discretion by
 admitting the evidence without the required Spoto
 analysis and accompanying procedural safeguards. See
People v. Chavez, 2020 COA 80M, ¶ 8, 486 P.3d 377,
 378 ("A court abuses its discretion if it misinterprets
 or misapplies the law.").

 ¶55
 The error was not harmless. The only issue at trial was
 whether Rojas obtained the food stamp benefits by deception.
"To prove the element of deception, the prosecution must
 prove that the defendant made a misrepresentation, which is
 'a false representation of a past or present fact,'
 and that 'the victim parted with something of value in
 reliance upon [the defendant's]
 misrepresentation[].'" People v. Vidauri,
 2021 CO 25, ¶ 13, 486 P.3d 289, 242 (quoting People
 v. Prendergast, 87 P.3d 175, 185 (Colo.App. 2003))
(alterations in original). Rojas's defense at trial was
 that her misrepresentations on the January application
 resulted from a misunderstanding of the forms; the
 prosecution contended that she made a knowing
 misrepresentation.

 ¶56
The prosecution relied on the August application during
 closing arguments. And, even if this evidence might have been
 admissible under Rule 404(b) for some non-propensity purpose,
 the absence of a limiting instruction permitted the jury to
 misuse the evidence. We believe there is a reasonable
 probability that admitting the August application, without
 any 404(b) safeguards, affected the fairness of the

 trial by allowing the jury to convict Rojas based on implied
 propensity-she misrepresented her income in August;
 therefore, she likely did it on the earlier applications too.

 III.
Conclusion

 ¶57
 The judgment of the court of appeals is reversed, and the
 case is remanded to the trial court for a new trial.

 CHIEF
 JUSTICE BOATRIGHT, joined by JUSTICE BERKENKOTTER, concurred
 in the judgment only.

 ¶58
 I agree with the majority that the trial court improperly
 admitted Rojas's August application as res gestae
 evidence. And I further acknowledge that the doctrine of res
 gestae has, at times, been misconstrued in Colorado's
 courts. But I disagree with the majority's conclusion
 that jettisoning the doctrine will solve any problems-it
 won't. Regardless of whether we call evidence res gestae,
 intrinsic evidence, or other-acts evidence under CRE 404(b),
 courts will always be confronted with the difficult question
 of when the crime starts and stops. In other words, no matter
 what the doctrine is called, courts still must parse out when
 an act begins to constitute an "other act." Because
 that question will always exist, I fear that the
 majority's decision is only going to cause a needless
 explosion of CRE 404(b) hearings, furthering the burden on
 Colorado's overworked trial courts. And equally
 importantly, such broad action violates stare decisis. As the
 majority acknowledges, res gestae has been a part of Colorado
 law for well over a century. See Maj. op. ¶ 18.
Yet, today, it boldly proclaims that res gestae must be
 discarded. I strongly, but respectfully, disagree. Therefore,
 I concur in the judgment only.

 I.
Res Gestae Evidence Is Just Relevant Evidence

 ¶59
 Simply put, res gestae is a label used to describe a subset
 of relevant evidence. As such, we have said that res gestae
 is a theory of relevance, not an alternative theory of
 admissibility that escapes the scrutiny of CRE 401, 402, and
 403. People v. Quintana, 882 P.2d 1366, 1374 (Colo.
1994) ("Res [g]estae evidence
 is admissible only if it is relevant and its probative value
 is not substantially outweighed by the danger of unfair
 prejudice.").

 ¶60
 Res gestae evidence is "linked in time and circumstances
 with the charged crime, . . . forms an integral and natural
 part of an account of the crime, or is necessary to complete
 the story of the crime for the jury." Id. at
 1373 (quoting United States v. Williford, 764 F.2d
 1493, 1499 (11th Cir. 1985)). Moreover, the doctrine includes
 "acts and words which are so closely connected" to
 the charged offense "as to constitute a part of the
 transaction, and without knowledge of which the main fact
 might not be properly understood." People v.
 Rollins, 892 P.2d 866, 872-73 (Colo. 1995) (quoting
Woertman v. People, 804 P.2d 188, 190 n.3 (Colo.
1991)).

 ¶61
 The majority and I seem to agree that in order to elucidate
 the definition of res gestae, it is essential to distinguish
 CRE 404(b) and the specific types of evidence that the Rule
 endeavors to protect against. Under CRE 404(b)(1), parties
 are prohibited from introducing evidence of "any other
 crime, wrong, or act . . . to prove a person's character
 in order to show that on a particular occasion the person

 acted in conformity" therewith. This Rule aims to
 protect defendants against unfairly prejudicial
 "propensity" arguments-arguments that use evidence
 of a defendant's "bad" character to show that
 she acted in line with her character and therefore committed
 the charged offense. See Masters v. People, 58 P.3d
 979, 995 (Colo. 2002); Stull v. People, 344 P.2d
 455, 458 (Colo. 1959), superseded by rule as stated in
 People v. Williams, 2020 CO 78, ¶¶ 7-15, 475
 P.3d 593, 595-98.

 ¶62
 By its plain language, CRE 404(b)(2) makes clear that such
 evidence is admissible for purposes besides propensity, such
 as "proving motive, opportunity, intent, preparation,
 plan, knowledge, identity, absence of mistake, or lack of
 accident." However, because the Rules of Evidence aim to
 avoid unfairly prejudicing defendants, a proponent of
 other-acts evidence faces additional procedural hurdles. The
 proponent must provide opposing counsel with pretrial notice
 of intent to introduce other-acts evidence. CRE 404(b)(3).
The trial court must make multi-part evidentiary findings to
 determine whether the evidence is or is not admissible under
 CRE 404(b). See Kaufman v. People, 202 P.3d 542,
 552-53 (Colo. 2009). And if the court does find the evidence
 admissible, it must then "instruct the jury, pursuant to
 CRE 105, on the limited purpose for which such evidence is
 admitted," both at the time of admission and at the
 close of evidence. People v. Garner, 806 P.2d 366,
 374 (Colo. 1991).

 ¶63
 The distinction between res gestae and CRE 404(b) is visible
 in the plain language of the Rule itself. While res gestae
 evidence is integral to the charged crime, CRE 404(b)
 proscribes introducing evidence of "other" acts,
 crimes, or wrongdoings. And so, under a plain reading of CRE
 404(b), only evidence of acts, crimes, or wrongdoings that
 are independent from the charged offense must be
 presented with special caution for fear of unfair prejudice
 to the defendant. Quintana, 882 P.2d at 1373 n.12.
CRE 404(b) was "never intended to apply to evidence that
 is admissible due to its inherent connection to the crime
 charged." State v. Gunby, 144 P.3d 647, 668
(Kan. 2006) (McFarland, C.J., dissenting) (referring to Kan.
 Stat. Ann. § 60-455 (2021), Kansas's version of CRE
 404).

 ¶64
 Therefore, res gestae evidence and CRE 404(b) evidence are
 different types of evidence. On the one hand, CRE 404(b)
 protects defendants from the introduction of evidence that is
 extrinsic, albeit relevant, to the charged offense. On the
 other hand, the doctrine of res gestae recognizes that the
 prosecution may introduce relevant evidence of acts intrinsic
 to the charged offense. This separation makes sense because
 the purpose underlying CRE 404(b) is not served by excluding
 res gestae evidence. While a jury may misuse extrinsic
 evidence for propensity purposes, evidence of acts admitted
 under res gestae are themselves part of the charged
 offense; thus, their introduction does not offend the
 propensity rule. See Quintana, 882 P.2d at 1372.

 II.
Res Gestae Has Been Subject to Misuse

 ¶65
 The majority criticizes res gestae as being too confusing and
 too malleable. See Maj. op. ¶¶ 36-38. It
 worries that res gestae is used to sneak in the type of
 propensity evidence that CRE 404(b) is meant to exclude.
See id. at ¶¶ 2, 24, 38. Despite the
 doctrinal distinction between CRE 404(b) and the res gestae
 doctrine, I take the majority's point that Colorado's
 courts have, at times, admitted evidence under res gestae
 when it should have been protected by the safeguards of CRE
 404(b). In fact, I agree.

 ¶66
 To be frank, this case presents a clear example of other-acts
 evidence that was improperly admitted as res gestae evidence.
The People charged Rojas for unlawfully receiving food stamps
 from February 1, 2013, to July 31, 2013. The separate August
 application was (1) removed in time and (2) inessential to
 complete the story of the charged offense. See
Rollins, 892 P.2d at 873 (finding evidence that was
 "neither contemporaneous with nor provided a background
 for the offense charged" did not constitute res gestae
 evidence). Submitting the August application did not help
 Rojas allegedly steal food stamps from February to July of
 2013. It was not "so closely connected" with the
 charged crime that it "constitute[d] a part of the
 transaction." See id. at 872 (quoting
Woertman, 804 P.2d at 190 n.3). In fact, the
 subsequent application was wholly extrinsic.

 ¶67
 With that said, I agree with the majority that the proper
 course of action here is reversing Rojas's
 conviction.[1] But, in my view, it is improper to use
 this case to disregard a legal doctrine that has existed for
 over a century, and I believe such action will cause (at
 best) confusion and (at worst) misuse. Instead, I would
 strengthen the already-existing guardrails surrounding the
 doctrine. First, I would emphasize that res gestae evidence
 must be essential to the commission of the charged
 crime. Second, I would caution that, even if the proffered
 evidence is essential, it is not admissible if it is unfairly
 prejudicial under CRE 403. Third, where appropriate, I would
 encourage trial courts to provide CRE 105 limiting
 instructions alongside evidence admitted as res
 gestae.[2] Finally, I would stress that the doctrine
 of res gestae is not an exception to skirt the
 protections of

CRE 404(b): Other-acts evidence that is truly extrinsic, such
 as the evidence of Rojas's subsequent application in this
 case, must be safeguarded by pretrial notice, a hearing, and,
 where appropriate, a limiting instruction.

 III.
Abandoning Res Gestae Is Unwise

 ¶68
 I believe that the majority's decision to casually say
 "farewell" to res gestae is ill-advised for three
 reasons. First, res gestae is merely a framework that assists
 courts in making difficult and fact-intensive evidentiary
 decisions. There will always be the question of when a crime
 starts and when it stops; the majority's attempt to
 answer that question just shifts the analysis to CRE 404(b).
Second, the majority's holding today imposes an
 unreasonable burden on Colorado's trial courts by
 needlessly pushing them to analyze vast amounts of evidence
 at a pretrial stage under the rubric of CRE 404(b). Finally,
 to discard res gestae violates the mandate of stare decisis
 and disrupts the rule of law.

 A.
The Majority's
Decision Does
Not Solve
the Underlying Dilemma

 ¶69
 The majority concludes that the solution to res gestae's
 misuse is to rebrand the doctrine.[3] See Maj. op.
 ¶¶ 44-52. Pursuant to the majority's new rule,
 a

 reviewing court must determine what constitutes the
 "charged offense." Id. at ¶ 44.
Evidence of acts that "implicate" the
 defendant's character but (1) directly prove the charged
 offense, or (2) are performed contemporaneously with the
 charged offense and therefore facilitate its commission will
 be admissible as "intrinsic" evidence under the
 framework of CRE 401-403. Id. at ¶¶ 43-44.
Evidence of acts that implicate the defendant's character
 but are "extrinsic"-that is, they do not directly
 prove nor facilitate the offense-will then become other-acts
 evidence under CRE 404(b). Id. at ¶ 52. And
 whether intrinsic or extrinsic, evidence will be governed by
 CRE 401-403 (not CRE 404(b)) as long as it does not implicate
 the defendant's character. Id. at ¶¶
 43, 52. That seems simple enough.

 ¶70
 But, in my view, rebranding res gestae in this way solves
 nothing. This is because the majority's holding seemingly
 ignores the reality that crimes are not committed in neat
 packages. Every offense comes with context; therefore,
 practically speaking, "prosecutors cannot . . . avoid
 showing certain acts that are not themselves perfectly
 congruent with the categories defining the charged crime

 or crimes." 1 Christopher B. Mueller & Laird C.
 Kirkpatrick, Federal Evidence § 4:33 (4th ed.
 2021).

 ¶71
 My point is simply that by substituting "intrinsic
 evidence" for res gestae evidence, the majority does not
 vanquish the debate as to what is part of the crime-it merely
 tweaks the wording of the test under which that evidence is
 admissible. Under the majority's new regime, the fight
 will now be over which acts "directly prove" or
 "facilitate" the charged offense (and are therefore
 admissible under the framework of CRE 401-403) as opposed to
 which acts do not fit that description (and are therefore
 protected by CRE 404(b)).

 ¶72
 Indeed, in jurisdictions where appellate courts have
 disavowed res gestae in favor of intrinsic evidence, the
 struggle to define what does and does not constitute Rule
 404(b) evidence is still being battled out in the trial
 courts. Consider, for example, one of the cases that the
 majority apparently models its new rule upon, United
 States v. Green, 617 F.3d 233 (3d Cir. 2010).
See Maj. op. ¶ 44. In Green, the Third
 Circuit Court of Appeals denounced the federal equivalent of
 res gestae in favor of roughly the same rule that the
 majority announces today. 617 F.3d at 246-49. With this
 proclamation, the court intended to nullify the "elusive
 and unhelpful" doctrine in favor of cleaner rules.
Id. at 246.

 ¶73
 Yet, foreseeably, the Green court merely shifted the
 conversation. After the decision was handed down, trial
 courts in the Third Circuit were left to consider

 what, exactly, is admissible under the new,
 "narrow[er]" intrinsic evidence standard.
Id. at 248. And roughly twelve years later, it seems
 as if the new label gives rise to the same varied results as
 the old one. See United States v. Williams, 974 F.3d
 320, 357 (3d Cir. 2020) ("[T]he nature and scope of the
 evidence able to be deemed intrinsic will vary with the
 charged offense. In particular, where a criminal conspiracy
 is charged, courts have afforded the prosecution considerable
 leeway to present evidence, even of unalleged acts within the
 indictment period . . . .") (collecting cases); see
 also United States v. Schneider, 801 F.3d 186, 200-01
(3d Cir. 2015) (ruling that evidence that the defendant
 showed the victim a sexually charged film was admissible as
 intrinsic evidence in a prosecution for traveling in foreign
 commerce with the intent to engage in sex with a minor);
United States v. Gassew, 42 F.Supp.3d 686, 694 (E.D.
 Pa. 2014) (concluding it was proper to admit evidence that
 the defendant robbed patrons and employees of a bar at the
 same time he robbed the bar itself because it "directly
 prov[ed]" that he robbed the bar-the charged offense in
 that case). It seems that rebranding res gestae has failed to
 eliminate the fight over Rule 404(b) classifications in the
 Third Circuit, and I predict Colorado will be no different.

 ¶74
 Moreover, I believe the majority's ruling today will have
 unintended consequences. At oral argument, defense counsel
 raised an interesting argument. She posited that the doctrine
 of res gestae prompts hurried, whispered

 conversations at the bench, where trial court judges must
 make split-second decisions about what is and is not res
 gestae evidence. From my experience, I know that her
 assertion is accurate. But the problem that defense counsel
 diagnoses is not due to res gestae's imperfection.
Rather, it is a direct result of how inherently difficult it
 is to determine when the charged offense ends and
 "other" offenses, acts, or misdeeds begin. That
 grey area will not suddenly become black and white after res
 gestae is replaced. For this reason, I am certain that,
 despite the majority's holding today, those whispered
 conversations and split-second evidentiary rulings at the
 bench will continue. The only difference is that, going
 forward, these conversations will be about why there was not
 adequate pretrial notice under CRE 404(b) for a vast array of
 evidence. In short, the majority's solution just shifts
 the type of debate that will necessarily occur. The fact is
 that these difficult decisions will always exist, regardless
 of what they are called.

 B.
The Majority's
Decision Places
an Unreasonable
Burden on Trial Courts

 ¶75
 Undoubtedly, it is Colorado's already overworked trial
 courts that will bear the brunt of the majority's
 holding. Because of the dangers of the propensity inference,
 CRE 404(b) requires the proponent of other-acts evidence to
 give opposing counsel advance notice of intent to introduce
 the evidence at trial and the trial court to both (1) rule on
 the evidence's admissibility prior to trial and

(2) provide an accompanying limiting instruction if it rules
 the evidence admissible.

 ¶76
 The majority's decision to discard res gestae facilitates
 a shift. Now, I envision that, mid-trial, attorneys will
 argue that evidence of every granular detail (even if
 relevant and integral to the case-such as the example of the
 alleged robber who uses check-cashing as a ruse to scout out
 a bank in advance of the actual robbery, see Maj.
 op. ¶ 51) depicts an "other act" and therefore
 should have been safeguarded under CRE 404(b). I fear that
 the question of what is or isn't part of a charged
 offense under CRE 404(b) will be excessively litigated,
 clogging the courts with a glut of unnecessary pretrial
 hearings. In my view, it is not only unnecessary but also
 unreasonable to increase the workload of the trial courts in
 the name of a solution that, in reality, does not resolve the
 question of what is part of a crime and what is not. Again,
 that question will remain, regardless of what we call it.

 C.
The Majority's Decision Violates
the Mandate
of Stare Decisis

 ¶77
 Finally, under the principle of stare decisis, I believe the
 doctrine of res gestae should be kept intact. Stare decisis
 is a fundamental principle of the rule of law; it is the
 "preferred course because it promotes the evenhanded,
 predictable, and consistent development of legal principles,
 fosters reliance on judicial decisions, and contributes to
 the actual and perceived integrity of the judicial

 process." Love v. Klosky, 2018 CO 20, ¶
 14, 413 P.3d 1267, 1270 (quoting Payne v. Tennessee,
 501 U.S. 808, 827 (1991)).

 ¶78
 Throughout this court's history, "we have explained
 that stare decisis 'should be adhered to in the absence
 of sound reason for rejecting it.'" People v.
 Blehm, 983 P.2d 779, 788 (Colo. 1999) (quoting Smith
 v. Dist. Ct., 907 P.2d 611, 612 (Colo. 1995)). In other
 words, we have a duty to exercise "extreme reluctance in
 overruling settled law." In re Marriage of
 Grubb, 745 P.2d 661, 667 (Colo. 1987) (Erickson, J.,
 dissenting). Departure from precedent should only occur when
 "we are clearly convinced that (1) the rule was
 originally erroneous or is no longer sound because of
 changing conditions and (2) more good than harm will come
 from departing from precedent." Love, ¶
 15, 413 P.3d at 1270.

 ¶79
 Here, in my view, "no reason is advanced which calls for
 deviating from stare decisis," see Creacy v. Indus.
 Comm'n, 366 P.2d 384, 386 (Colo. 1961); thus, we
 should decline to do so. As the majority acknowledges, the
 doctrine of res gestae is well-settled. See Maj. op.
 ¶ 18. Colorado courts have recognized the early forms of
 res gestae since at least the 1870s. See Doane v.
 Glenn, 1 Colo. 495, 499-501 (1872), rev'd on
 other grounds by Doane v. Glenn, 88 U.S. 33 (1874). Even
 in its more modern form, res gestae has been a part of our
 jurisprudence for over ninety years. See Abshier v.
 People, 289 P. 1081, 1088 (Colo. 1930) (holding that
 evidence of the defendant's other crimes was admissible
 because the offenses were "indivisibly

 connected with, incidental to, and in furtherance of"
 the charged crime). And a quick survey of Colorado case law
 reveals that courts have consistently relied on the res
 gestae framework in tandem with the Rules of Evidence for the
 past forty-odd years. See People v. Czemerynski, 786
 P.2d 1100, 1109 (Colo. 1990); Quintana, 882 P.2d at
 1373-74; Rollins, 892 P.2d at 872-73; People v.
 Skufca, 176 P.3d 83, 86-87 (Colo. 2008); People v.
 Merklin, 80 P.3d 921, 924-25 (Colo.App. 2003);
People v. Thomeczek, 284 P.3d 110, 114-15 (Colo.App.
2011); People v. Cisneros, 2014 COA 49, ¶¶
 105-06, 108, 356 P.3d 877, 898; People v. Knapp,
 2020 COA 107, ¶¶ 32-34, 44, 487 P.3d 1243, 1252-53.

 ¶80
 The majority justifies discarding this foundational doctrine
 by pointing to its inconsistent application and misuse in
 Colorado's courts, see Maj. op. ¶ 41, which
 I agree has occurred. But courts have misapplied CRE 404(b)
 tests as well. The truth is that these are tough calls. The
 endless fight over whether evidence is or is not admissible
 under CRE 404(b) will undoubtedly continue, no matter how the
 test is worded. Thus, I see no utility in the majority's
 ruling. Because the test for abandoning well-established
 precedent, as articulated in Love, is not satisfied,
 in my view, the majority violates the mandate of stare
 decisis with its ruling today.

 IV.
Conclusion

 ¶81
 In sum, while I agree with the majority that the
 misapplication of res gestae should be addressed, I believe
 that replacing the doctrine creates new problems

 while failing to address existing ones. I strongly disagree
 with the majority's decision because it will unreasonably
 burden the trial courts, disturb over a century of precedent,
 and destabilize Colorado's evidence jurisprudence-all for
 the purpose of mere rebranding.

 ¶82
 Therefore, instead of casting off the doctrine, I would
 simply clarify it. I would hold, as we have held for nearly a
 century, that evidence integral to the charged offense is
 relevant evidence admissible under the framework of CRE
 401-403 by way of res gestae. Additionally, I would (1)
 caution that evidence admitted as res gestae must be
 essential to complete the story of the charged
 offense; (2) point out that res gestae evidence is still
 subject to the limitations of CRE 403; (3) encourage trial
 courts to provide a limiting instruction alongside res gestae
 evidence, where appropriate; and (4) emphasize that the
 doctrine cannot be used as a work-around to CRE 404(b). With
 this guidance, I believe we could not only preserve but also
 improve the framework that helps trial courts identify
 other-acts evidence under CRE 404(b).

 ¶83
 Because I agree with the majority that reversal is required
 but believe that abandoning the doctrine of res gestae is
 not, I respectfully concur in the judgment only.

---------

Notes:

[1] Whether res gestae should survive in
 civil actions, where it crops up far less frequently, is not
 before us. Therefore, we pass no judgment on that issue in
 this opinion.

[2] The legislature amended the theft
 statute, effective June 5, 2013. Ch. 373, sec. 1, §
 18-4-401, 2013 Colo. Sess. Laws 2196. Because the amendment
 became effective during the alleged offense here, the
 prosecution charged Rojas with two counts of theft rather
 than one-one count for the period governed by the old statute
 and one count for the period governed by the amended
 statute.

[3] We granted certiorari to review the
 following issues:

1. Whether evidence that petitioner committed a
 similar offense, after the charged offense, is admissible
 without a limiting instruction, under the res gestae
 doctrine, to prove that she committed the charged
 offense.

2. Whether this court should abolish the res gestae
 doctrine.

[4] Stull required that (1) the
 prosecutor inform the court of the purpose for which the
 evidence was offered; (2) if the court admitted the evidence,
 "it should then and there instruct the jury as
 to the limited purpose for which the evidence is being
 received and for which the jury may consider it"; (3)
 the written jury instructions should repeat the limited
 purpose for which the evidence was admitted; and (4) any
 reference to the evidence should be in such terms as
 "transactions" or "acts" or
 "conduct" rather than "offenses" or
 "crimes" or the like. 344 P.2d at 458-59.

[5] This court amended CRE 404(b) on March
 29, 2021, effective July 1, 2021, to, among other things,
 create subsection (3). The substance of the Rule remains
 largely unchanged.

[6] To the extent that we suggested in
 Greenlee that Rule 404(b) is implicated only by
 other criminal acts, we disavow that suggestion.
See Kaufman v. People, 202 P.3d 542, 552-60 (Colo.
2009) (analyzing the admissibility of the defendant's
 non-criminal conduct, which included martials arts and weapon
 training, drawings, and weapons collection, under 404(b) and
Spoto); Masters v. People, 58 P.3d 979,
 996-1004 (Colo. 2002) (analyzing the admissibility of the
 defendant's drawings and writings under 404(b) and
Spoto).

[7] The federal analogue to res gestae,
 the "inextricably intertwined" doctrine, has come
 under fire for many of the same reasons motivating our
 decision today. See, e.g., Edward Imwinkelried,
 The Second Coming of Res Gestae: A Procedural Approach to
 Untangling the 'Inextricably Intertwined' Theory for
 Admitting Evidence of an Accused's Uncharged
 Misconduct, 59 Cath. U. L. Rev. 719, 729-30 (2010)
("'Inextricably intertwined' is the 'modern
 de-Latinized' equivalent of res gestae, and it
 has been savaged by a similar critique. . . . The vacuous
 nature of the test's wording gives courts license to
 employ sloppy analysis and allows them quickly to slip from a
 conclusory analysis to a desired conclusion." (citations
 omitted)); Milton Hirsch, "This New-Born Babe an
 Infant Hercules": The Doctrine of "Inextricably
 Intertwined" Evidence in Florida's Drug Wars,
 25 Nova L. Rev. 279, 280-81, 294-95, (2000) (noting that res
 gestae often operates as a "shibboleth" or
 "talisman," which seemingly, upon incantation,
 allows courts to engage in results-oriented decision-making);
Jason Brauser, Intrinsic or Extrinsic?: The Confusing
 Distinction Between Inextricably Intertwined Evidence and
 Other Crimes Evidence Under Rule 404(b), 88 Nw. U. L.
 Rev. 1582, 1618 (1994) ("By abolishing the inextricably
 intertwined exception, the courts will be forced to analyze
 whether uncharged misconduct evidence is offered for a
 legitimate purpose or whether it is offered only to show a
 defendant's character."). Some courts have been
 similarly unsparing. See, e.g., United States v.
 Cureton, 739 F.3d 1032, 1037 (7th Cir. 2014) (noting
 that res gestae "is usually propensity evidence simply
 disguised as inextricable intertwinement evidence, and is
 therefore improper" (quoting Gorman, 613 F.3d
 at 718)).

[8] Of course, like all evidentiary
 decisions, a trial court's ruling regarding whether
 evidence triggers Rule 404(b) is subject to review under the
 deferential abuse of discretion standard. See People v.
 Jones, 2013 CO 59, ¶ 11, 311 P.3d 274, 276.

[1] Instead of simply remanding for a new
 trial, as the majority does, see Maj. op. ¶ 4,
 I would reverse and remand with specific instructions for the
 trial court to determine if this evidence is admissible under
 CRE 404(b) prior to the new trial. This way, there would be
 no unnecessary confusion.

[2] Courts are not required to provide
 limiting instructions under CRE 105 when they admit evidence
 as res gestae. See Quintana, 882 P.2d at 1375.
However, when it comes to some types of res gestae
 evidence-such as essential, contextual evidence that could
 nonetheless implicate a defendant's character-nothing
 prohibits courts from alerting the jury to the limited,
 contextual purpose for which the evidence is admitted.
See People v. Gladney, 570 P.2d 231, 233 (Colo.
1977) (noting that it is the "better practice" to
 provide a limiting instruction alongside res gestae
 evidence). Encouraging trial courts to more freely provide a
 limiting instruction alongside sensitive res gestae evidence
 would lessen the risk that the jury might misuse it.

[3] I say that the majority's opinion
 "rebrands" the doctrine because, despite its broad
 proclamation that the mere notion of res gestae obfuscates
 CRE 404(b) analyses, see Maj. op. ¶ 36, it has
 chosen to retain res gestae's core concept, see
id. at ¶ 44 (maintaining the
 "intrinsic-extrinsic distinction"). As such, it
 seems that the majority has "abolished]" res gestae
 in name only. See id. at ¶ 41.

---------