No. 25858

**The People of the State of Colorado v.
Robert Fermin Trujillo and Rudolph Melcor Montoya**
(527 P.2d 52)

Decided October 7, 1974.

330

John P. Moore, Attorney General, John E. Bush, Deputy, Donna A. Maranchik, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, T. Michael Dutton, Deputy, for defendant-appellant Robert Fermin Trujillo.

Michael O. Kelley, for defendant-appellant Rudolph Melcor Montoya.

*In Department.*

Opinion by MR. JUSTICE GROVES.

The defendants were convicted of felony theft of a typewriter. We affirm.

At about 3:00 p.m. on January 8, 1972, Edith Calmez, medical secretary at St. Mary-Corwin Hospital in Pueblo, prepared to leave her office for the day. She covered her electric typewriter and left the hospital. About 8:00 p.m. that evening Kenneth Oliver, x-ray technician at the hospital,

entered Mrs. Calmez' office and noticed that the typewriter was gone. At the trial Mrs. Calmez identified the typewriter found in the possession of defendants that same night as the one which she used in her office.

At about the time Mr. Oliver discovered that the typewriter was missing, a Pueblo police officer was contacted by an informant who gave him the following information: Within the past hour the informant had been contacted by the defendants who advised that they had an electric typewriter that was "hot" and inquired whether informant knew anyone who wanted to purchase it. The informant observed the typewriter in the middle of the front seat of a car occupied by the defendants. The informant described the make, year and color of the car.

Within an hour after the officer received this information he and another officer encountered the defendants, both in the front seat of the described car with the typewriter between them. The defendants left the car, but were located a short time later and were arrested.

I.

■ Instruction No. 5 given to the jury read as follows: "The Court instructs the jury that the defendants are presumed to be innocent of the offenses charged in the Information, and the burden rests upon the prosecution to prove them guilty beyond a reasonable doubt before a conviction can be had.

"If from the evidence in this case, or the lack of evidence, you entertain a reasonable doubt as to any material fact necessary to constitute any of the offenses charged, then it will be your duty to give the defendants the benefit of such doubt and acquit them of such offense."

The defendants urge as error the failure to give the instruction approved in *Martinez v. People,* 172 Colo. 82, 470 P.2d 26 (1970). *Martinez* was announced two years prior to the trial of this case. The instruction approved there reads as follows:

" 'The law presumes every person charged with crime to be innocent. This presumption of innocence remains with the defendant throughout the trial and should be given effect by

you unless and until, by the evidence introduced before you, you are convinced the defendant is guilty beyond a reasonable doubt.' "

The defendants complain that the court should have instructed that the presumption of innocence remains with the defendants throughout the trial. Each of the defendants tendered an instruction on presumption of innocence, but neither mentions that the presumption remains with the defendants throughout the trial.

The faults in an instruction which this court sought to cure in *Martinez* are not present here. We believe that the instruction given sufficiently advised the jury on the subject although, of course, it would have been preferable to use the added language in the *Martinez* instruction. Failure to use it is not reversible error.

The *Martinez* instruction is set forth in Colorado Uniform Criminal Jury Instructions No. 3:5. These instructions were approved by this court on September 14, 1972, after the trial of the instant case. We do not reach the question as to whether the instruction given would have constituted reversible error if the trial had been subsequent to September 14, 1972.

II.

■ Mr. John J. Culig, Director of Purchasing for St. Mary-Corwin Hospital, testified that the typewriter had a fair market value of $155 to $165. The defendants contend that this testimony was based upon hearsay and upon trade-in value. It is true that he had contacted a typewriter concern as to trade-in value. However, he testified that he was responsible for about 50 similar typewriters at the hospital and that he was testifying as to the situation "if someone came into my office selling that particular equipment, I would buy it for." He made it plain, when asked if he was basing his figures on trade-in value, that he was testifying as to market value. He was sufficiently qualified to so testify.

III.

■ The court granted the defendants' motion for a bill of particulars as to the section or sections of the theft statute

under which the people were proceeding. We are unable to find in the record the bill of particulars furnished, but at one point counsel for the defendant Trujillo stated, "They specify larceny and receiving stolen property theories, and specified all of the various intent sections contained in the theft statute." The court denied defendants' motion to require the people to elect between the different parts of the theft statute. They claim error in the instruction of the court which set forth all of 1967 Perm. Supp., C.R.S. 1963, 40-5-2(1). In other words, it set forth the different kinds of thefts, being: obtaining or exerting unauthorized control over property; obtaining control by deception; obtaining control by threat; obtaining control knowing the article to have been stolen by another; and knowingly using, concealing or abandoning an article.

While we cannot see any reason for including irrelevant portions of the statute in the instruction, neither can we perceive any prejudice to the defendant by their inclusion. Juries are smart enough to sort the wheat from the chaff in situations such as this.

### IV.

As to the next point, we cannot improve upon the treatment thereof by the Attorney General, and we quote from his brief.

"Citing *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963), defendant claims it was reversible error for the trial court to deny paragraph 11 of their Motion for Discovery, which requested '[a]ny material or information which would tend to negate the guilt of the accused as to the offense charged or would tend to reduce [their] punishment therefore.' . . . The Court denied these requests because there was 'no showing of the existence, materiality or reasonableness thereof.' . . .

"Certainly, a denial of due process results when the police or the prosecution suppress evidence which might be helpful to the defendant, or when the trial court ignores such evidence when it is presented. *Brady v. Maryland, supra; Cheatwood v. People,* 164 Colo. 334, 435 P.2d 402 (1967); *Sandoval v.*

*People,* 180 Colo. 180, 503 P.2d 1020 (1972). This Court has held that a demand for evidence which is unknown to the defendant is *not* a prerequisite to the right to the production of favorable evidence. *People v. Walker,* 180 Colo. 184, 504 P.2d 1098 (1972). Under the rulings of the United States Supreme Court and of this Court, the prosecution had a duty, notwithstanding the lack of a court order, to produce any evidence favorable to the defendants. Clearly, neither a demand by the defendants nor an order by the Court was necessary to protect the defendants' rights.

"Furthermore, there has been no showing, or attempt to show, that the State withheld evidence which would have tended to negate the defendants' guilt or reduce their punishment. Unless and until the defendants can set forth some facts to indicate that the prosecution did suppress evidence, their claim is without a factual foundation and should not be entertained by this Court. *State v. Hanson,* 286 Minn. 317, 176 N.W. 2d 607 (1970)."

## V.

The defendants claim error from the admission in evidence of two advisement forms, one relating to one defendant and the other to the other defendant. These are along the lines usually used. Neither is signed by a defendant. At the bottom of each, above the signature of the police officer, is the following handwriting: "Was advised of rights — stated he understood, would not sign anything."

Citing *People v. Mingo,* 181 Colo. 390, 509 P.2d 800 (1973), the defendants contend that the admission of these exhibits was violative of their rights against self-incrimination guaranteed to them by U.S. Const. amend. V and XIV and Colo. Const. Art. II, Sec. 18. *Mingo* is not in point. There, the defendant refused to talk, and his refusal was brought out at trial and commented upon by the prosecutor in closing argument. Here, the defendants talked freely. They each maintained that they knew nothing about the typewriter. Their only refusal was to sign the advisement form. When they did not claim the Fifth Amendment rights, but rather answered questions, they cannot claim that their rights against self-incrimination were violated.

## VI.

The other assignments of error are without merit.

Judgment affirmed.

MR. JUSTICE KELLEY, MR. JUSTICE HODGES and MR. JUSTICE LEE concur.