No. 25381

**The People of the State of Colorado v. John J. Storr**

No. 25461

**The People of the State of Colorado v.**
**Francis A. Mojo, Jr.**
(527 P.2d 878)

Decided September 30, 1974. Opinion modified and as modified rehearing denied November 11, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, Aurel M. Kelly, Assistant, Robert C. Lehnert, Assistant, for plaintiff-appellee in No. 25381.

Blewitt, Bisbee, Geil & Kezer, John H. Bisbee, for defendant-appellant.

John P. Moore, Attorney General, John E. Bush, Deputy, Robert C. Lehnert, Assistant, for plaintiff-appellee in No. 25461.

Robert Bruce Miller, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Storr and Mojo were jointly charged, but separately tried, and convicted of possessing a narcotic drug for sale and for conspiracy to sell a narcotic drug. The record establishes that the defendants entered into a drug transaction with under-

cover police agents. On appeal, both defendants assert that the trial courts erred in denying their respective motions for judgments of acquittal and for judgments notwithstanding the jury's verdict. Mojo further asserts that reversible error occurred when the district attorney in the course of the trial of Storr commented on Mojo's failure to relate his version of the incident to the police during the one and one-half year interim between arrest and trial. Although separate appeals were pursued, we have consolidated the cases for disposition in this opinion. We affirm the judgments of the trial courts as to both defendants.

At their trials, Storr and Mojo relied on the affirmative defense of duress and coercion. C.R.S. 1963, 40-1-11. They assert that duress and coercion prevented them from having the requisite specific intent to commit the crimes charged.

### I.
### The Storr Defense

Storr claims that he procured and offered to sell the marijuana because his life was threatened and for no other reason. He originally met with Robert Duitch on November 13, 1969, to attempt to sell him a life insurance policy. During the course of their discussion, Duitch told Storr that he had agreed to sell 800 pounds of marijuana to a member of a Denver motorcycle gang but could not complete the transaction. He asked Storr to fabricate an excuse for him. Storr acceded to the request and offered an excuse, but then volunteered to sell them 200 pounds of marijuana. The so-called gang members, who, in fact, were detectives Newman and Taketa, accepted the new offer and accompanied Storr and Duitch to Duitch's home. Later that evening, Duitch went to Storr's home to inform him of the threats which had been made to him. Storr testified that Duitch was panic-stricken and said that unless the marijuana deal was finalized, the motorcycle gang would kill both of them.

### II.
### The Mojo Defense

Mojo's defense is similar to Storr's. He claims that he did not have the specific intent to possess and sell marijuana,

because he acted only to prevent injury to his friend, Storr. After Storr learned of the threats on his life from Duitch, he contacted Mojo and recounted the events which related to the threats and the proposed marijuana transaction. Storr said that he needed to procure the marijuana, and Mojo agreed to help. Mojo was successful in obtaining the marijuana and later confirmed the delivery details with Duitch.

## III.
### Events Culminating in Arrest

On the evening of November 13, 1969, Duitch, Storr, and Mojo met with the undercover agents at the Base Mar Shopping Center. The marijuana was in a van in the shopping center parking lot. When negotiations broke down, the police, who had been alerted by the disguised undercover agents, seized the marijuana and arrested the participants, including Storr and Mojo. *See People v. Mojo,* 173 Colo. 422, 480 P.2d 571 (1971).

## IV.
### The Motions for Judgment of Acquittal and for Judgment Notwithstanding the Verdict

Both Storr and Mojo claim that the trial courts erred in denying their motions for judgments of acquittal and assert that the jury's verdict must be set aside. They maintain that the circumstantial evidence, viewed as a whole, was insufficient to prove possession beyond a reasonable doubt. *People v. Sanchez,* 184 Colo. 25, 518 P.2d 818 (1974). We have held that a jury's verdict is not subject to attack if the prosecution established a prima facie case. *Digiallonardo v. People,* 175 Colo. 560, 488 P.2d 1109 (1971). The issue is whether a jury could reasonably conclude from the evidence presented at trial that possession of marijuana by each of the defendants was proven beyond a reasonable doubt. *People v. Marques,* 184 Colo. 262, 520 P.2d 113 (1974). We will not substitute our judgment for that of the jury and set aside a verdict because the jury could have drawn a different conclusion. In our view, the motions for a judgment of

acquittal were properly denied and the issue of guilt was for the jury to determine. Although the marijuana seized in this case was found in a van which was neither owned nor driven by Storr or Mojo, the prosecution introduced sufficient evidence to prove the necessary association of Storr and Mojo to the drug and to the van to support the inference that they had constructive possession of the marijuana.

■ In *People v. Vigil,* 175 Colo. 421, 489 P.2d 593 (1971), we said that even though a defendant does not have marijuana on his person, constructive possession may be proved by showing that the "marijuana . . . was at a place at least partially under his dominion and control." The concept of "dominion and control" was also set out in *United States v. Hernandez,* 290 F.2d 86 (2d Cir. 1961). There, the court observed that "a person who is sufficiently associated with the persons having physical custody so that he is able, without difficulty to cause the drug to be produced for a customer can also be found by a jury to have dominion and control over the drug, and therefore possession." The indicia of constructive possession were set forth in *United States v. Jones,* 308 F.2d 26 (2d Cir. 1962):

"Properly admitted evidence showing that a given defendant set the price for a batch of narcotics, had the final say as to means of transfer, or was able to assure delivery may well be sufficient to charge the defendant with a constructive possession of the narcotics . . . ."

■ The record contains sufficient evidence of constructive possession to convict Mojo. Mojo asked his friend Tooley to obtain the 200 pounds of marijuana which was the object of the sale. Moreover, at the time of delivery, Mojo pointed out the van carrying the marijuana to one of the undercover agents and retorted that it would not stop at the parking lot unless the gang members demonstrated an ability to pay $16,000. He also told the agent that an automobile was tracking the van to assure that the transaction proceeded according to plan and that he could sell the marijuana within one half hour if the deal were cancelled.

By his own statements, Mojo demonstrated his participation in arranging the sale and in controlling the disposition of the marijuana. The trial court did not err in denying his motion for a judgment of acquittal.

Storr was convicted as an accessory to Mojo for the crime of possession of marijuana. As an accessory who aided and abetted Mojo, he could be properly convicted as a principal under C.R.S. 1963, 40-1-12, since "the acts of the principal are the acts of the accessory." *Oaks v. People,* 161 Colo. 561, 424 P.2d 115 (1967); *Mulligan v. People,* 68 Colo. 17, 189 P. 5 (1919). To prevail on the accessory theory, the prosecution had to prove three factors: (1) that the principal, Mojo, committed the crime of possession; (2) that the accessory, Storr, had knowledge that the principal intended to commit the crime; and (3) that with this knowledge, the accessory "did in fact aid or encourage, with the specific intent to so aid or encourage, the principal in the commission of the crime." *People v. Marques,* 184 Colo. 262, 520 P.2d 113 (1974).

The prosecution introduced evidence which satisfied this test. As shown above, a prima facie case of possession as to Mojo was demonstrated. Second, Storr had knowledge of Mojo's intention to sell the marijuana, since he asked Mojo to obtain the marijuana and was present with Mojo when Mojo was endeavoring to complete the transaction and make delivery. Finally, the prosecution presented evidence that Storr aided and encouraged Mojo in committing the crime. At Duitch's apartment, at the behest of an undercover agent, Storr called Mojo to determine the reason for delay in procuring the marijuana. He assured the prospective buyers that the marijuana would be delivered. Storr acted as the intermediary between the undercover police and Mojo. By communicating the details and arrangements concerning two drug transactions between Mojo and the agents, he revealed a specific intent to aid Mojo in completing the sale. He did not merely refer Duitch to an appropriate source, or to Mojo, and then cease participation. *Hill v. United States,* 379 F.2d 811 (9th Cir. 1967).

## V.
### Prosecutorial Comment

An issue before us is whether the acts and comments of the prosecutor require that we grant Mojo a new trial. Mojo asserts that an accused has the right to remain silent at the time of trial and not to have his silence or his election not to testify commented on by the prosecutor. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

 It is axiomatic that the privilege against self incrimination has been jealously guarded by the courts. *See United States v. Nolan,* 416 F.2d 588 (10th Cir. 1969). However, the constitutional privilege against self incrimination can be waived when an accused broadcasts his version of a criminal incident to others and then elects to take the witness stand and explain his conduct in the criminal transaction or in ensuing police investigation. *See Hines v. People,* 179 Colo. 4, 497 P.2d 1258 (1972); *United States ex rel. Burt v. New Jersey,* 475 F.2d 234 (3d Cir. 1963); *United States v. Ramirez,* 441 F.2d 950 (5th Cir. 1971). If a defendant does not waive or otherwise justify comment by the prosecutor, reversal and a new trial must be ordered when the prosecutor causes the defendant's silence to be highlighted in his closing arguments to the jury. *Johnson v. Patterson,* 475 F.2d 1066 (10th Cir. 1973); *United States v. Nolan, supra. See also People v. Trujillo,* 186 Colo. 329, 527 P.2d 52.

The facts in the instant case establish that the defendant was advised of his right to remain silent and in the opinion of the court recognized the right and knowingly waived the right. Mojo was called as a defense witness in the Storr trial. Following his testimony in chief, the prosecutor questioned him about his failure to disclose his claim of compulsion by the threats of a motorcycle gang to the police. Counsel objected and the trial court, after reviewing the waiver issue, advised Mojo that he could answer the question or refuse to do so if he deemed the question inappropriate. Mojo answered the question and then said that he had told the United States Attorney, a federal narcotics agent and several others all about the motorcycle gang and his reason for

participating in the narcotics transaction. When Mojo was tried at a later date, the prosecutor read selected portions of his testimony at the Storr trial to the jury.

While ordinarily questioning of the type indulged in here is not permissible, under the unique circumstances of this case, reversible error did not occur here.

 In our view, the evidence was properly admitted at trial. When Mojo related his defense of compulsion to a number of people and then elected to testify and to offer an explanation for his conduct and for his silence, he placed his credibility in issue and exposed himself to cross-examination on his initial silence. *See Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

Accordingly, we affirm the convictions of both defendants.

MR. JUSTICE LEE does not participate.