22CA1501 Peo v Duffield 07-18-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA1501 El Paso County District Court No. 21CR4345 Honorable Monica J. Gomez, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Daniel Keith Duffield, Defendant-Appellant. JUDGMENT AFFIRMED Division IV Opinion by JUDGE NAVARRO Pawar and Richman*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 18, 2024 Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Krista A. Schelhaas, Alternate Defense Counsel, Littleton, Colorado, for Defendant-Appellant *Sitting by designation of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 Defendant, Daniel Keith Duffield, appeals the judgment of conviction imposed on jury verdicts finding him guilty of possession with the intent to manufacture or distribute a controlled substance and a special offender count alleging possession of a firearm during the drug crime. We affirm. I. Factual and Procedural History ¶ 2 In 2021, Duffield was charged with the counts described above. He was convicted and sentenced to sixteen years in the custody of the Department of Corrections. We discuss additional factual and procedural history as it becomes relevant to Duffield’s appellate claims. II. Sufficiency of the Evidence ¶ 3 Duffield contends that the prosecution presented insufficient evidence to sustain his convictions.
1 We disagree. A. Standard of Review and Applicable Law ¶ 4 We review the record de novo to determine whether the evidence admitted at trial was sufficient in both quantity and 1 Because it is more efficient to address Duffield’s sufficiency claim first, we address his claims in an order different from how he presents them on appeal. 
2 quality to sustain a defendant’s convictions. Lawrence v. People, 2021 CO 28, ¶ 23. We cannot, however, intrude upon the fact finder’s role by reweighing the evidence. People v. Kessler, 2018 COA 60, ¶ 12; see People v. Arzabala, 2012 COA 99, ¶ 13 (“An appellate court is not permitted to act as a ‘thirteenth juror’ and set aside a verdict because it might have drawn a different conclusion had it been the trier of fact.”) (citation omitted). Instead, we recognize that it is the fact finder’s role to determine the questions of witness credibility and the weight to be given to conflicting items of evidence, and we must give the prosecution the benefit of every inference that may fairly be drawn from the evidence. Kessler, ¶ 12. ¶ 5 We employ the substantial evidence test and ask whether the evidence — viewed as a whole and in the light most favorable to the prosecution — was substantial and sufficient to support a conclusion by a reasonable mind that the defendant was guilty of the charge beyond a reasonable doubt. Gorostieta v. People, 2022 CO 41, ¶ 16. That is, we assess whether “any rational trier of fact might accept the evidence . . . as sufficient to support” a guilty finding beyond a reasonable doubt. People v. Sprouse, 983 P.2d 771, 777 (Colo. 1999). 
3 B. Additional Facts ¶ 6 Law enforcement officers investigated Duffield’s associate, Samuel Boyd, for manufacturing and selling controlled substances in Colorado and South Dakota. As part of this investigation, agents from the federal Drug Enforcement Agency began surveilling a white Jeep Cherokee that Boyd often used. ¶ 7 In July 2021, the Jeep was seen in Colorado Springs. Officers observed Boyd, Duffield, and a woman get into the Jeep and run errands around town before driving the Jeep to South Dakota. At that time, Duffield was driving the Jeep. ¶ 8 A few days later, Duffield was spotted with the Jeep at a hotel in South Dakota. Officers observed him carrying a rifle case from the Jeep to the hotel. ¶ 9 In August 2021, the Jeep was seen parked outside of a residence in Colorado Springs. Around this time, Boyd’s ex-fiancee, who owned the Jeep, reported it as stolen. When South Dakota officers learned this information, they notified officers in Colorado Springs. Officers surveilling the Colorado Springs residence watched Duffield arrive by motorcycle and enter the residence. A short time later, Duffield approached the vehicle and opened the 
4 driver’s side door. Officers then arrested him. At the time of his arrest, Duffield had the key fob to the Jeep. ¶ 10 A search of the Jeep revealed 210 grams of methamphetamine and 27 grams of cocaine, as well as digital scales and plastic baggies with a monkey emblem. Several firearms were also found. In addition, officers discovered a green notebook and a pair of AirPods. One page of the notebook included a reference to selling AirPods. Also found in the Jeep was a notary stamp belonging to Duffield. ¶ 11 At trial, the prosecution sought to introduce photos recovered from Duffield’s phone and his Facebook account that showed him posing with various firearms. Relevant here, the prosecution sought to introduce four exhibits: • Exhibit 34: A message and photos of two firearms, including a distinctive revolver, sent by Duffield through Facebook in July 2021; • Exhibit 35: A photo depicting Duffield holding an AK-47 with a distinctive orange magazine, sent by Duffield through Facebook in July 2021; 
5 • Exhibit 36: A message and photo showing Duffield holding a distinctive black pistol grip shotgun, sent by Duffield through Facebook in May 2021; and • Exhibit 37: Six photos of Duffield holding a firearm with a distinctive drum magazine, sent by Duffield through Facebook in April 2021. ¶ 12 Duffield objected to admission of these exhibits, arguing that the photos were irrelevant because the prosecution could not prove that these specific firearms were the same weapons recovered from the Jeep. He also argued that the photos showed nothing more than that he legally possessed the firearms. ¶ 13 The prosecution countered by arguing that the firearms in Exhibits 34-37 each had distinct features that matched the firearms found in the Jeep. The prosecutor addressed each photo in Exhibits 34-37 and identified the distinctive qualities that matched the firearms seized from the Jeep. Thus, he argued that the photos made it more likely that Duffield knowingly possessed the firearms found in the Jeep at the time of his arrest. The trial court concluded that that the firearms were relevant and not unfairly prejudicial. 
6 C. Analysis ¶ 14 Duffield contends that the evidence was insufficient to sustain his convictions. Specifically, he argues that there was insufficient evidence establishing his “awareness of the drugs or weapons found in the vehicle.” 1. Possession With Intent ¶ 15 Under the first charge, the prosecution had to prove beyond a reasonable doubt that Duffield knowingly possessed a controlled substance with the intent to dispense, sell, or distribute it. See § 18-18-405(1)(a), C.R.S. 2023. Duffield argues that the evidence was insufficient to establish that he “knowingly possessed” the drugs at issue. But we conclude that the evidence was sufficient to permit the jury to find that he possessed the Jeep where the drugs were found and that he knew of the drugs. ¶ 16 First, ample evidence indicated that Duffield had the requisite dominion and control over the Jeep to establish possession of it and its contents. A “controlled substance need not be found on the person of the defendant, as long as it is found in a place under his or her dominion and control.” People v. Warner, 251 P.3d 556, 564-
65 (Colo. App. 2010) (quoting People v. Atencio, 140 P.3d 73, 75 
7 (Colo. App. 2005)). If a “defendant has exclusive possession of the premises in which drugs are found, the jury may infer knowledge from the fact of possession.” People v. Baca, 109 P.3d 1005, 1007 (Colo. App. 2004). If, however, the defendant is not in exclusive possession of the premises in which the drugs are found, such an inference may not be drawn unless there are statements or other circumstances tending to buttress that inference. People v. Stark, 691 P.2d 334, 339 (Colo. 1984); Warner, 251 P.3d at 564-65. ¶ 17 Even under the stricter standard applied to nonexclusive possession, we conclude the evidence was adequate to show that Duffield knowingly possessed the Jeep. He was observed driving the Jeep on multiple occasions before his arrest. At the time of his arrest, he had the Jeep’s key fob and had opened a Jeep door. And, on an earlier occasion, Duffield discussed in Facebook messages the fact he was looking for the key fob to the Jeep. ¶ 18 In addition, several of Duffield’s personal possessions were found inside the Jeep. For example, officers found an intimate photo of Duffield and his girlfriend, a notary stamp that bore his name, a pair of AirPods, and a notebook that included a reference to the sale of the AirPods. The serial number on the AirPods was 
8 the same number found on the AirPods that Duffield had attempted to sell on Facebook. ¶ 19 The evidence was also sufficient to establish that Duffield had knowledge of the drugs in the Jeep. For example, the same notebook found that contained references to Duffield’s AirPods also contained a list of chemicals and a series of numbers that a detective described at trial as something commonly found in “drug ledger[s].” ¶ 20 Moreover, the prosecution submitted photographs establishing a link between Duffield and the drugs found in the Jeep.
2 Photos found on his phone showed empty plastic baggies marked with a monkey emblem. Empty baggies bearing the same monkey emblem were found in the Jeep at the time of Duffield’s arrest. ¶ 21 Viewing this evidence in the light most favorable to the prosecution, it was sufficient to permit the jury to find that Duffield 2 Duffield takes issue with the admissibility of the photographs taken from his phone and Facebook account. When reviewing a defendant’s assertion that the evidence was insufficient to support his conviction, however, an appellate court “must consider all the evidence admitted at trial, including the erroneously admitted evidence.” People v. Hard, 2014 COA 132, ¶ 39. Furthermore, as we discuss, we conclude that the photographs we identify as supporting his conviction were properly admitted. 
9 had possession of the Jeep and its contents as well as knowledge of the drugs therein. ¶ 22 Duffield’s arguments to the contrary dispute the persuasive value or weight of the evidence. But we may not intrude on the jury’s role by reweighing the evidence. Kessler, ¶ 12. As noted, a conviction for possession of a controlled substance may be predicated on circumstantial evidence. Warner, 251 P.3d at 564. The circumstantial evidence in this case was compelling. Although the jury perhaps could have reached a different verdict based on the limitations of the evidence alleged by Duffield, our role is to review the verdict the jury actually reached, and the evidence provides support for it. ¶ 23 We take Duffield’s point that others also had access to the Jeep. But circumstantial evidence (including the “drug ledger” with information about his AirPods) buttressed the inference that he knew of the drugs found in the Jeep. Hence, the jury could infer his knowledge of the drugs even though he did not have exclusive possession of the Jeep. See People v. Yeadon, 2018 COA 104, ¶¶ 24-29, aff’d, 2020 CO 38; People v. Wilkie, 185 Colo. 149, 151-
10 52, 522 P.2d 727, 729 (1974); People v. Storr, 186 Colo. 242, 247, 527 P.2d 878, 881 (1974). ¶ 24 Finally, we note that Duffield challenges only the sufficiency of the evidence as it relates to his knowing possession of the controlled substances. At trial, however, the jury was also instructed on a theory of complicity, meaning that Duffield could have been convicted if the jury found that he was a complicitor in Boyd’s commission of the crime. Duffield does not challenge the sufficiency of the evidence as it relates to complicity. For this additional, independent reason, we reject his claim that the evidence was insufficient to support his conviction. 2. Special Offender Count ¶ 25 As pertinent here, a defendant is guilty as a special offender if the prosecution proves, beyond a reasonable doubt, that the defendant possessed a deadly weapon, to which the defendant or a confederate had access in a manner that posed a risk to others or in a vehicle the defendant occupied, during the commission of a drug felony. § 18-18-407(1)(d)(II), C.R.S. 2023. Duffield contends that the prosecution presented insufficient evidence to establish that he was a special offender. Specially, he says the evidence did 
11 not permit the jury to find that he knowingly possessed the guns found in the Jeep. ¶ 26 As discussed above, the evidence was sufficient to establish that Duffield possessed the Jeep — and, thus, the guns — at the time of his arrest. And the special offender statute does not express a mens rea requirement, such as knowingly. See id. Furthermore, divisions of this court have held that “a mens rea requirement is neither included in nor implied by the special offender statute.” People v. Pineda-Eriza, 49 P.3d 329, 332 (Colo. App. 2001); People v. Vasquez, 768 P.2d 721, 727 (Colo. App. 1988). Duffield does not acknowledge these decisions, much less argue that they were wrongly decided. Hence, we reject his sufficiency claim regarding the special offender count. ¶ 27 Even assuming, however, that the mental state of knowingly applied to the special offender count, we conclude that the evidence was sufficient to permit the jury to find that Duffield knowingly possessed the firearms in the Jeep. ¶ 28 The prosecution offered photos taken from Duffield’s phone and Facebook account that showed him posing with various firearms. The prosecution argued that the firearms in each photo 
12 contained distinctive characteristics that made them identifiable, such as a “distinctive black pistol grip shotgun,” a “distinctive drum magazine,” and a “distinctive orange magazine.” The prosecution connected these photos to evidence sized from the Jeep — specifically, Exhibits 18-20 and 24. For instance, the prosecutor argued that the revolver depicted in Exhibit 34 matched the make and model of the revolver that was found in the Jeep (Exhibit 20) and that both firearms shared a distinctive scratch. Similarly, the prosecutor argued that the AK-47 depicted in Exhibit 35 had an orange stock that appeared to match Exhibit 19, the AK-47 found in the Jeep. Likewise, the black pistol grip shotgun seen in Exhibit 36 arguably matched the gun in Exhibit 18, and the firearm with the distinctive drum magazine seen in Exhibit 37 also appeared to match the weapon in Exhibit 24. Thus, the prosecution asserted that the features of the firearms in Duffield’s photos matched the characteristics of the weapons seized from the Jeep, making it more likely that he knowingly possessed the weapons. And officers testified that they had observed Duffield carrying a plastic rifle case from the Jeep into a hotel. 
13 ¶ 29 Although defense counsel identified alleged dissimilarities between the guns in the photos and those found in the Jeep, these differences merely affected the weight to give the evidence. They did not preclude the jury from relying on the photos, at least in part, to find that Duffield knew of the weapons found in the Jeep. ¶ 30 In total, the evidence was sufficient to sustain Duffield’s conviction under the special offender statute. III. Alleged CRE 404(b) Evidence ¶ 31 Next, Duffield contends that the trial court violated CRE 404(b) by admitting the photos of Duffield with the firearms and the photos of the plastic baggies. A. Standard of Review and Applicable Law ¶ 32 We review a trial court’s evidentiary rulings for an abuse of discretion. Rojas v. People, 2022 CO 8, ¶ 16. ¶ 33 Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” CRE 401. Although generally admissible, relevant evidence may be excluded “if its probative value is substantially 
14 outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.” CRE 403. ¶ 34 Relevant evidence may also be excluded under CRE 404(b)(1), which prohibits the admission of evidence of “any other crime, wrong, or act [when offered] to prove a person’s character in order to show that on a particular occasion the person acted in conformity with the character.” B. Analysis ¶ 35 As noted, Duffield argues that the trial court violated Rule 404(b) by admitting the photos of (1) Duffield posing with firearms and (2) certain plastic baggies. We disagree. ¶ 36 When evaluating whether uncharged conduct evidence triggers Rule 404(b), a trial court must first determine if the evidence is intrinsic or extrinsic to the charged offense. Rojas, ¶ 52. Intrinsic acts are those that (1) directly prove the charged offense or (2) occurred contemporaneously with the charged offense and facilitated the commission of it. Id. Evidence of acts that are intrinsic to the charged offense are exempt from Rule 404(b). Id. Evidence of extrinsic acts may be subject to Rule 404(b) but only if the evidence suggests bad character. Id. “[I]f extrinsic evidence 
15 does not suggest bad character, Rule 404(b) does not apply[,] and admissibility is governed by Rules 401-403.” Id. ¶ 37 We first consider the photos of the firearms.
3 These photos did not depict acts indicating Duffield’s misconduct or bad character. Instead, the photos portrayed him legally possessing firearms. Indeed, defense counsel reiterated on multiple occasions that the firearms depicted in the photos were legally owned. The prosecutor did not argue otherwise. Because legally possessing a firearm does not suggest bad character, this evidence did not trigger Rule 404(b). See id. at ¶ 51 (recognizing that Rule 404(b) does not govern evidence that does not implicate bad character even if it makes it more likely that the defendant committed the charged offense). ¶ 38 Accordingly, we disagree with Duffield’s contention that admission of this evidence was governed by Rule 404(b) and, therefore, required an analysis under People v. Spoto, 795 P.2d 1314 (Colo. 1990). Also, given the high probative value of the evidence, CRE 403 did not bar its admission. See People v. Rath, 3 The parties dispute whether Duffield preserved his CRE 404(b) claim concerning the firearm photos. We need not resolve this dispute because we see no error. 
16 44 P.3d 1033, 1043 (Colo. 2002) (“Because the balance required by CRE 403 favors admission, a reviewing court must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected.”). ¶ 39 We next consider evidence of the plastic baggies. The prosecution offered into evidence a photo of empty plastic baggies with a monkey emblem and another photo of vacuum-sealed plastic baggie that appeared to contain a white powder. These photos were found on Duffield’s phone. Because Duffield did not object, we review only for plain error and perceive none. See Hagos v. People, 2012 CO 63, ¶ 14. ¶ 40 The photo of empty plastic baggies with the monkey emblem did not implicate Rule 404(b) because they did not suggest bad character. Furthermore, the photo was both material and probative because the baggies in the photo matched the baggies found in the Jeep (thus tying Duffield to the Jeep and its contents). ¶ 41 As to whether admitting the photo depicting a vacuum-sealed baggie containing white powder violated Rule 404(b), we conclude that any error in admitting it was not plain. As Duffield concedes, 
17 the photo did not demonstrate that the baggie contained “actual drugs.” Although a prosecution witness testified that they “guess[ed]” the white power was methamphetamine, the photo was not conclusive on that point. ¶ 42 Additionally, there was significant evidence supporting Duffield’s conviction that he knowingly possessed the drugs. To reiterate, the evidence indicated that he possessed the Jeep where the drugs were found. Personal items belonging to Duffield were found in the Jeep. Photos of empty plastic baggies with a monkey emblem found on his phone were like the baggies found in the Jeep. And a “drug ledger” in the Jeep referenced Duffield’s AirPods. Therefore, any error in admitting the photo of the baggies with a white substance did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the conviction. See Hagos, ¶ 14. IV. Jury Instructions ¶ 43 Duffield contends that the trial court lowered the prosecution’s burden of proof by incorrectly instructing the jury. Specifically, he argues that the court erred by (1) instructing the jury that he need only have “constructive possession” of the drugs and guns and 
18 (2) failing to instruct the jury that the prosecution had the burden of proving beyond a reasonable doubt each element of the special offender count. A. Standard of Review and Relevant Law ¶ 44 We review jury instructions de novo to determine whether, as a whole, they accurately informed the jury of the governing law. Riley v. People, 266 P.3d 1089, 1092-93 (Colo. 2011). If the instructions properly inform the jury of the law, the trial court has “broad discretion to determine the form and style of jury instructions.” Day v. Johnson, 255 P.3d 1064, 1067 (Colo. 2011). Accordingly, we review a trial court’s decision concerning a proposed jury instruction for an abuse of discretion, and we will not disturb the ruling unless it is manifestly arbitrary, unreasonable, or unfair. Id. B. Possession Jury Instruction ¶ 45 At the jury instruction conference, the prosecutor tendered an instruction with an expanded definition of possession. Defense counsel objected, and the trial court declined to give the prosecution’s possession definition as proposed. But the court ultimately decided to include two sentences from the instruction 
19 offered by the prosecution. Again, defense counsel objected. Despite the objection, the court used the following description of possession: “Possession” constitutes a “voluntary act” if the actor was aware of his physical possession or control thereof for a sufficient period to have been able to have terminated it. The law recognizes several kinds of possession. A person may have actual possession or constructive possession. A person may have sole or joint possession. The second paragraph came from the prosecution’s proposed instruction. ¶ 46 “Possession” of a controlled substance does not have a statutory definition. Patton v. People, 35 P.3d 124, 131 (Colo. 2001). Consequently, we interpret the term by giving effect to its generally accepted meaning. See People v. Rosburg, 805 P.2d 432, 439 (Colo. 1991). As pertinent here, “[p]ossession” is commonly understood to mean “control or occupancy of property without regard to ownership.” Merriam-Webster Dictionary, https://perma.cc/MRQ2-XPD4. ¶ 47 Consistent with the common meaning of the term, Colorado case law recognizes that “possession” requires “immediate and 
20 knowing control over the substance,” regardless of ownership. Patton, 35 P.3d at 131; People v. Warren, 55 P.3d 809, 816 (Colo. App. 2002) (approving an instruction that read, “‘Possession,’ . . . does not necessarily mean ownership, but does mean actual, physical possession, or the immediate and knowing dominion or control over the object or the thing allegedly possessed”). Under Colorado law, therefore, possession may be actual or constructive. See Storr, 186 Colo. at 247, 527 P.2d at 881 (“[E]ven though a defendant does not have marijuana on his person, constructive possession may be proved by showing that the ‘marijuana . . . was at a place at least partially under his dominion and control.’”) (citation omitted). As indicated, a person constructively possesses an item where the person does not have physical possession over an object but has dominion and control over the place where the object is found. Warner, 251 P.3d at 565. Consequently, the trial court’s instruction here was a correct statement of the law. ¶ 48 Arguing otherwise, Duffield says the instruction provided was problematic because the jury might have understood the term “constructive possession” to mean “possession without awareness.” We disagree because we do not consider a jury instruction in a 
21 vacuum; rather, we consider it in the context of the instructions as a whole. Johnson v. People, 2019 CO 17, ¶ 14. ¶ 49 The definition of “possession” provided to the jury expressly stated that possession was a “voluntary act” only if “the actor was aware of his physical possession or control” over the controlled substance. (Emphasis added.) Additionally, the instruction defining the substantive offense expressly said that, to convict, the jury must find that Duffield “knowingly” possessed the controlled substance with the intent to distribute. Further, the court gave another jury instruction that stated, “Proof of the voluntary act alone is insufficient to prove that the defendant had the required state of mind,” and the instruction defined “knowingly.” ¶ 50 Given all this, we conclude that the challenged instruction was not legally erroneous or an abuse of discretion.
4 4 We also note that, in closing arguments, both parties explained to the jury that Duffield must have had knowledge of the drugs and firearms to be convicted of the crimes charged. 
22 C. Special Offender Jury Instruction ¶ 51 Duffield also contends that the trial court erred by failing to instruct the jury that the prosecution must prove each element of the special offender count beyond a reasonable doubt. ¶ 52 The elemental instruction regarding the special offender count (Instruction 15) read as follows: The elements of the crime of special offender are: (1) On or about the date and place charged (2) In El Paso County, Colorado (3) the Defendant (4) or a confederate of the defendant possessed a firearm, as defined in these instructions, to which the defendant or confederate had access in a manner that posed a risk to others or in a vehicle the defendant was occupying at the time of the commission of the violation. (Emphasis added.) Duffield did not object to this instruction. ¶ 53 The jury also received an instruction (Instruction 4) explaining that the “burden of proof is upon the prosecution to prove to the satisfaction of the jury beyond a reasonable doubt the existence of all of the elements necessary to constitute the crime charged.” 
23 (Emphasis added.) The jurors were instructed that, if they found that the prosecution had failed to prove “any one or more of the elements of a crime beyond a reasonable doubt,” they should find Duffield not guilty of that crime. (Emphasis added.) ¶ 54 It would have been better practice to include the beyond a reasonable doubt standard in Instruction 15, defining the elements of the special offender count. Considered in combination, however, Instructions 4 and 15 advised the jury that it could not convict Duffield of the special offender crime unless the prosecution proved every element of that crime beyond a reasonable doubt. ¶ 55 We acknowledge that Instruction 12 was odd. That instruction advised the jury that, if it found Duffield guilty of possession with intent to manufacture or distribute a controlled substance, it should answer a special interrogatory on the verdict form relating to (1) the weight of the methamphetamine and (2) whether he possessed a firearm during the offense. The instruction noted that prosecution had to prove the amount of methamphetamine beyond a reasonable doubt but did not make the same note as to the prosecution’s burden of proof for possession of the firearms. 
24 ¶ 56 Referring to a special interrogatory on firearm possession in Instruction 12 was apparently a mistake, however, because the jury did not receive such an interrogatory on the verdict form for the possession of a controlled substances charge. Instead, the jury received a separate special offender verdict form, on which the jury found him guilty of that crime. ¶ 57 Although the instructions were not ideal, we must read them as a whole. Doing so, we conclude that the alleged error was not prejudicial enough to constitute plain error. See Hagos, ¶ 14 (explaining that the plain error standard was formulated only “to correct ‘particularly egregious errors’”) (citation omitted). V. Cumulative Error ¶ 58 Finally, we disagree with Duffield that the alleged errors require reversal under the cumulative error doctrine. ¶ 59 “When reviewing for cumulative error, we ask whether ‘numerous formal irregularities, each of which in itself might be deemed harmless, may in the aggregate show the absence of a fair trial.’” People v. Vialpando, 2022 CO 28, ¶ 33 (quoting Howard-
Walker v. People, 2019 CO 69, ¶ 24). To reverse under this doctrine, we must conclude that “the cumulative effect of [multiple] 
25 errors and defects substantially affected the fairness of the trial proceedings and the integrity of the fact-finding process.” Howard-
Walker, ¶ 24 (quoting People v. Lucero, 200 Colo. 335, 344, 615 P.2d 660, 666 (1980)). ¶ 60 Because we have rejected most of Duffield’s assertions of error, and because the other alleged errors were not substantial, we conclude that, even in the aggregate, the asserted errors do not show the absence of a fair trial. VI. Conclusion ¶ 61 The judgment is affirmed. JUDGE PAWAR and JUDGE RICHMAN concur.